[No. B075973. Second Dist., Div. Four. Nov. 16, 1994.]

THELMA BARRIENTOS, Plaintiff, v.
CITY OF LOS ANGELES et al., Defendants;
STEVEN B. STEVENS et al., Objectors and Appellants;
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

## COUNSEL

James K. Hahn, City Attorney, Thomas C. Hokinson, Sr., Assistant City Attorney, Katherine J. Hamilton and Janet G. Bogigian, Deputy City Attorneys, Watkins & Stevens, Shirley K. Watkins and Steven B. Stevens for Objectors and Appellants.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

## OPINION

## VOGEL (C. S.), J.—

### INTRODUCTION

This appeal contests the trial court's order imposing a $1,500 sanction on each party's attorney in a civil liability action. After examining the entire record, we find that the court's order violated due process because counsel were neither notified of the court's intent to impose sanctions nor given an opportunity to respond before the court imposed the sanctions. Additionally, we conclude that the court imposed the sanctions for an improper purpose—to punish counsel for failing to settle the case—thereby rendering its order an abuse of discretion. We therefore reverse and direct refund of the moneys paid, plus interest.

### STATEMENT OF FACTS

*Background Information*

The underlying lawsuit is a personal injury action brought by Thelma Barrientos (Barrientos) against the City of Los Angeles (City) alleging police misconduct. Barrientos was represented by Steven B. Stevens (Stevens); City was represented by Assistant City Attorney Honey Lewis (Lewis).

Following a January 1993[1] status conference, the trial court (Judge Eric E. Younger) set the final status conference for April 1. Its order stated that the

---

[1] All subsequent dates refer to events occurring in 1993.

final status conference was also a mandatory settlement conference, subject to rule 222 of the California Rules of Court.[2] The order further recited: " 'Exterior' Settlement Efforts are to be completed at least five days prior to the next Status Conference: . . . A JASOP settlement conference is to be held;[3] Plaintiff's counsel is to arrange."

*The April 1 Hearing and Sanctions Order*

On April 1, while Lewis was in another courtroom, Stevens told the court that neither he nor Lewis had understood that that day's appearance embraced a mandatory settlement conference. Stevens explained that because the court had sent them to JASOP, they had assumed the JASOP conference was the mandatory settlement conference.

After Judge Younger recited the words of his January order which stated that the final status conference would also be a mandatory settlement conference, he told Stevens: "I trust that you and she [Lewis] will work the case out then before we need to talk about any distasteful matters, such as ignoring the court order and the California Rules of Court. I'm sure we won't have to talk any further about that because you guys will probably be able to settle it without that . . . ." Lewis was *not* present during these remarks.

Shortly thereafter, an unreported chambers conference between the court, Stevens, and Lewis was conducted after which they returned to the courtroom. Judge Younger took the bench and made the following comments:

"The court has endeavored to conduct a conference with counsel in chambers off the record, as is its almost invariable practice. [¶] The court notes that this matter was duly set for an MSC and final status conference on this date in the presence of both counsel on January 29, 1993, and that the status conference order of said date directs counsel to set up a JASOP conference and to return today for a final status conference. [¶] The order says in 14 point type, quote, 'Any final status conference is also a mandatory settlement conference and subject to CRC Section 222,' end quote. [¶] Counsel have advised the court that the JASOP people were unable to

[2]Rule 222 covers mandatory settlement conferences. In pertinent part it provides: "(c) Trial counsel, parties, and persons with authority to settle the case shall personally attend the conference, unless excused by the court for good cause. [¶] (d) No later than five days before the date set for the settlement conference, each party claiming damages shall file and serve on each party a statement containing a settlement demand and an itemization of special and general damages, and comply with any additional requirement imposed by local rule."

[3]JASOP is the "Joint Association Settlement Officer Program," a bar-sponsored settlement program which apparently settles many of the cases sent to it.

schedule a conference on a date which was five days prior to today's date. They each have reported that they made an effort to set that up within one week of [this court's January order]. . . . [¶] . . . [B]oth counsel have represented to me that the JASOP people were unable to accommodate them on any date prior to April 8th. [¶] The court further notes that in its efforts to discuss the matter with counsel that counsel repeatedly and apparently unable to control themselves after requests from the court to do so, continued to bicker with one another and generally seemed to prefer that to discussing the case with the court. [¶] And that on my second effort to calm that down, I gave up and decided to go on the record. [¶] Each party—I'm sorry—*counsel for each party are sanctioned in the amount of $1,500 each,* payable to the Treasurer of the County of Los Angeles on or before 4:00 p.m. on the date which would be reset for the mandatory settlement conference. *Said order will be stricken if the case is settled at or before the time of the mandatory settlement conference.* [¶] The court declines at this point to impose any further sanctions on counsel for their inability to stop bickering during the court's effort to hold a conference, but notes that this is the first time in probably three years, which makes it somewhere in the neighborhood of 750 conferences, that the court has felt constrained to throw attorneys out of chambers for their inability to conduct themselves appropriately. [¶] And the court asks the clerk to make note of that fact in the minute order so that if any pitch is made for a reduction of the sanctions which are ordered, this will be called to mind. [¶] Counsel are indeed directed to attend the JASOP conference on April 8th, which has apparently been set. The MSC and final status conference are reset . . . ." (Italics added.)

In the course of setting the date of the next appearance, the court stated: "I would also ask that each of you look again at the Department 18 guide on the court's views with regard to requiring cordiality among counsel.[4] . . . [¶] I think what the guide says is something to the effect if you're cordial with one another and speak audibly, those are about the only two rules that really matter a great deal in this courtroom. [¶] And just so you'll know, notwithstanding the fact that both sides seem to have decided to pretty well ignore the status conference order, I was more interested in getting the job done and was going to kind of forget about that. I think you'll recall I hadn't even gone back to that subject in chambers; *hadn't said anything about sanctions until the second time that our efforts at a conference broke down with you two sitting over there on the couch arguing with one another.* [¶] Let me stress that formality is not terribly important to me. The fact that you were addressing each other instead of the court, certainly in chambers, didn't

---

[4]Judge Younger was referring to a guide he had written explaining the procedures to be followed in his courtroom (department 18). Lewis and Stevens had each received a copy of the guide.

bother me much at all. That part is all right. The fact that it turned into a bickering match with each of you desperately needing to get in the last word, and not only not addressing comments to the court but flat out excluding me because I wasn't willing to get in and try to interrupt you two and assert myself. You know, this wasn't crossfire; it was an attempt at a settlement discussion. That does ring my bell." (Italics added.)

At no point did the court give either counsel the opportunity to address its sanctions order.[5]

Lewis and Stevens each paid the $1,500 to the County of Los Angeles as directed by the trial court.

*The Parties Move to Disqualify Judge Younger*

Within two weeks, Barrientos and City jointly moved to disqualify Judge Younger from further presiding in the lawsuit. They urged his April 1 sanctions order demonstrated that he harbored a bias against counsel for both parties. They claimed they had not been able to settle the case because of "a good faith disagreement . . . about the value of the action" but that the court had held them personally responsible for not reaching a settlement.

Stevens and Lewis each offered a declaration describing the unreported chambers conference with Judge Younger. Essentially, they urged that neither had understood that their April 1 appearance included a mandatory settlement conference; that during the chambers conference, they explained their respective views of the case, including its value; that each had acted professionally during the discussion; and that Judge Younger never informed them that he was considering imposing sanctions.

Judge Younger filed a verified answer to the disqualification motion. On the issue of giving notice to impose the sanctions, he averred: "I had clearly

---

[5]The court's minute order for April 1 recites: ". . . The court has endeavored to conduct a Mandatory Settlement Conference, in chambers, off the record. The court notes that this matter was duly set for a Mandatory Settlement Conference and Final Status Conference, in the presence of both counsel, pursuant to the Status Conference Order on January 29, 1993. Pursuant to said order, counsel were directed to set a JASOP conference at least 5 days prior to the Mandatory Settlement Conference/Final Status Conference. Counsel have advised the court that Jasop office was unable to accommodate them to schedule a timely settlement conference. [¶] The court further notes that during the conference, counsel repeatedly bickered with one another instead of discussing settlement. [¶] Pursuant to California Rule of Court section 222, counsel for the plaintiff, Steven B. Stevens, and the defendant, Honey A. Lewis, are each sanctioned in the sum of $1,500., payable to the Los Angeles County Treasurer, to be paid on or before April 14, 1993. Said sanctions will be stricken if the case is settled on [or] before said date. [¶] Mandatory Settlement Conference/Final Status Conference is CONTINUED to April 14, 1993 at 8:30 a.m., in this department. California Rule of Court section 222 will be strictly enforced. [¶] Counsel are directed to attend a JASOP conference of April 8, 1993. . . ."

mentioned both sides' violations of California Rules of Court § 222 before even going into chambers (Exs. 1, 2) [reporter's transcript and audio tape of April 1 hearing], and *had gently raised the subject of sanctions,* but had noted that perhaps the case would settle anyway, avoiding the problem." (Italics added.)

In regard to the chambers conference, his declaration averred that neither counsel apologized for not being prepared for the mandatory settlement conference; that Lewis had violated California Rules of Court, rule 222 because she lacked authority to settle the case and Stevens had violated rule 222 because his client (Barrientos) was not present (see fn. 2, *ante*); that counsel were rude to each other and the court; and that he had not imposed sanctions because of counsel's failure to settle the case. Significantly, Judge Younger's declaration never explicitly stated the basis of his sanctions order nor did it refute counsel's claim that he never raised the issue of sanctions during the chambers conference.

Judge Younger attached to his answer typed notes he made either during or immediately after the January and April status conferences. The notes for April 1 recited: "This was a disaster: Counsel jointly ignored the status conference order by not setting up a JASOP discussion for any date prior to today; it's set for April 8, and they *claim* that JASOP was contacted within a week of the prior (1/30) status conf. and was unable to accommodate them, which I sincerely doubt. Then, if that's not enough, they both claimed they didn't know today was the MSC, notwithstanding the status conference order and whatever prior discussions of it we had. [¶] *They seem to want a continuance, and pretty well demanded one. I told them it was unlikely I'd grant it, but they could make a motion.* [¶] The case sounds like the humbug of the century in terms of damages, etc., though the cops, thinking the lady [Barrientos] was an illegal vendor of cigarettes (heavy felony) did mistakenly chase after her, and it may be hard to disprove her assertion that she thought she was being robbed. I told them case was worth between 8,000 and 12,000, but broke up the conference because counsel (Lewis and Stevens) couldn't stop bickering with each other on couch. I did impose 1,500 sanctions on *each* side only for ignoring the order—not for misbehaving in chambers—but said I'd strike order if settled on or prior to new MSC date of 4/14/93." (Italics in original.)

Orange County Superior Court Judge Theodore E. Millard granted the disqualification motion. Judge Millard, however, did not resolve the issue of whether the sanctions order established bias. Instead, he found that the following underscored portion of Judge Younger's notes from the January status conference "clearly raise[d] a substantial doubt as to [his] impartiality." Those notes stated: "Routene [*sic*] police brutality case, with 22,000

plaintiffs' arb. Sounds like officers made mistake in assuming illegal activity and probably did some shoving around, *but plaintiff and her ex-con husband probably saw this as a cottage industry lawsuit opportunity and there is probably a lot of build up.* [¶] Should certainly settle, but the city hasn't done its homework. Jasop and final conf 4/1." (Italics added.)

## DISCUSSION

▉▉▉ Both Lewis and Stevens have appealed from the sanctions order. Although represented by different counsel, each essentially contends that the sanctions were imposed without sufficient notice and opportunity to be heard and that the sanctions were an inappropriate attempt to punish counsel because of their inability to settle the case. County Counsel, representing the County of Los Angeles which has become a party because the trial court's order directed payment of the sanctions to it, urges that counsel were given adequate notice and opportunity to be heard and that the trial court did not abuse its discretion in imposing sanctions. We find merit to appellants' contentions and therefore reverse the sanctions order.

▉▉▉ Due process mandates adequate notice and opportunity to be heard prior to the imposition of sanctions. (*Caldwell* v. *Samuels Jewelers* (1990) 222 Cal.App.3d 970, 976 [272 Cal.Rptr. 126].) The trial court may raise the issue of sanctions on its own motion but, in doing so, it *must* give notice of its intent to impose sanctions. (*Bergman* v. *Rifkind & Sterling, Inc.* (1991) 227 Cal.App.3d 1380, 1387 [278 Cal.Rptr. 583].) That "notice must be given *before* findings are made and at a time preceding the trial judge's decision whether, in fact, to impose sanctions." (*Ibid.*; italics in original.) "[The] adequacy of notice should be determined on a case-by-case basis to satisfy basic due process requirements. The act or circumstances giving rise to the imposition of expenses must be considered together with the potential dollar amount." (*Lesser* v. *Huntington Harbor Corp.* (1985) 173 Cal.App.3d 922, 932 [219 Cal.Rptr. 562].)

▉▉▉ As we shall explain, the record demonstrates that the trial court did not give counsel notice or an opportunity to be heard before ordering each attorney to pay $1,500 to the county, an amount which not only is financially significant but which must be reported to the State Bar. (Bus. & Prof. Code, §§ 6068, subd. (o)(3) [attorney must report to State Bar imposition of sanctions upon the attorney] and 6086.7 [the court shall notify the State Bar of its imposition of sanctions upon counsel].)

The only time the trial court even alluded to a possible intent to impose sanctions *before* the unreported chambers conference was the following

remark made to Stevens when Lewis was *not* present in the courtroom: "I trust that you and she [Lewis] will work the case out then before we need to talk about any distasteful matters, such as ignoring the court order and the California Rules of Court. I'm sure we won't have to talk any further about that because you guys will probably be able to settle it without that . . . ." Quite apart from the fact that Lewis had no knowledge of this remark, we do not believe that the remark[6] either adequately conveyed the court's intent to impose sanctions or granted counsel the opportunity to respond.[7]

Nor does the record clearly establish that Judge Younger gave notice of his intent to impose sanctions in the course of the unreported chambers conference. As already noted, in his comments made after imposing the sanctions, he stated that he "hadn't said anything about sanctions until the second time that our efforts at a conference broke down with you two sitting over there on the couch arguing with one another." However, these remarks, which did not actually describe counsel's comments, do not establish that he ever indicated the precise basis of a potential sanctions order.[8]

When reported proceedings resumed after the parties returned to the courtroom, Judge Younger imposed sanctions without giving either counsel an opportunity to respond. Stevens and Lewis should have been provided with an opportunity to explain, on the record, their conduct *before* the court made its decision.

Furthermore, not only did Judge Younger fail to comply with the due process requirements of giving notice and opportunity to be heard before imposing sanctions, but his underlying motive for the order was improper—to punish counsel for failing to settle the case. His reported remarks contain several references to counsel's "bickering" and "arguing." And he explicitly gave counsel a way to avoid paying the sanctions: settle the case! This record therefore establishes that the court used its power to impose

---

[6]Judge Younger was apparently referring to this remark when he claimed, in his verified answer to the disqualification motion, that he "had gently raised the subject of sanctions."

[7]The record does not indicate under what authority the sanctions were being imposed although several bases were potentially applicable. (See, e.g., Code Civ. Proc., § 177.5; Gov. Code, former § 68609, subd. (d); and rule 227, Cal. Rules of Court.) The court's oral remarks did not cite any particular authority. The court's minute order (fn. 5, *ante*) cited rule 222 but that rule does not authorize the imposition of sanctions but instead sets forth the procedures to be followed in conducting a mandatory settlement conference. (See fn. 2, *ante*.)

[8]In their declarations filed in support of the disqualification motion, Stevens and Lewis each unequivocally stated that Judge Younger gave no such notice during the chambers discussion. Judge Younger's responsive declaration never affirmatively denied those assertions. As all of the parties to this appeal have proceeded upon the assumption that this court, in evaluating the sanctions order, could review the evidence marshalled in regard to the disqualification motion, we have referred to it to the extent relevant.

monetary sanctions on counsel as a tool to coerce a settlement.[9] This was improper. ▮ Several courts have noted, in the context of evaluating sanctions orders based upon a party's nonappearance at a settlement conference, that while the trial court may direct litigants to engage in settlement negotiations, it may not compel litigants to settle a case. (See, e.g., *Sigala* v. *Anaheim City School Dist.* (1993) 15 Cal.App.4th 661, 669 [19 Cal.Rptr.2d 38], and *Wisniewski* v. *Clary* (1975) 46 Cal.App.3d 499, 505 [120 Cal.Rptr. 176].)[10] It therefore follows that the trial court may not use the threat of sanctions against their counsel to coerce the parties to reach a settlement. ▮ In this case, the sanctions order was particularly improper because it generated a personal and financial incentive for counsel to reach a settlement. This, in turn, created an inherent conflict of interest between counsel, who would have to pay sanctions reportable to the State Bar if the case did not settle, and their clients, who could have legitimate reasons to decline to settle the lawsuit.

In sum, the sanctions order was an abuse of discretion. We will reverse the order and order a refund of the moneys paid, plus interest. (See, e.g., *Bergman* v. *Rifkind & Sterling, Inc., supra,* 227 Cal.App.3d 1380.)

## DISPOSITION

The order imposing sanctions is reversed. The county is directed to refund forthwith the moneys paid by counsel, plus interest from the dates of payment. Lewis and Stevens to recover their costs on appeal.

Epstein, Acting P. J., and Hastings, J., concurred.

---

[9]The order excusing the payment of sanctions if the case was thereafter settled appears to be consistent with the court's usual practice. In his declaration filed in opposition to the motion to disqualify, Judge Younger stated: "Except in the most egregious cases, I strike the sanctions orders if the case settles by a certain date, a practice which I have found to be universally popular with counsel (until the instant Motion) and which is simply put, my way of saying 'no harm, no foul' when a case 'goes away.'"

[10]In determining whether a successful Code of Civil Procedure section 170.6 challenge disqualified a judge from thereafter setting and conducting a settlement conference, the reviewing court noted: "And it is a truism that a court has no power to compel a litigant to settle a case at any stage of the proceedings. [Citation.]" (*Mezzetti* v. *Superior Court* (1979) 94 Cal.App.3d 987, 991-992 [156 Cal.Rptr. 802].)