[No. D053519. Fourth Dist., Div. One. July 28, 2009.]

Conservatorship of the Person and Estate of BIBIANO BECERRA.
VIDA F. NEGRETE et al., Appellants, v.
BIBIANO BECERRA, Respondent;
LINDA PAQUETTE, Objector and Appellant.

### COUNSEL

Linda Paquette, in pro. per., for Objector and Appellant and for Appellants.

Parisa P. Farokhi for Respondent.

### OPINION

**HUFFMAN, Acting P. J.**—In this conservatorship case, objector and appellant Linda Paquette (Appellant), an attorney who was representing a party in the action, appeals an order by the probate court ordering her to pay monetary sanctions to the court and attorney fees to the court-appointed attorney for the proposed conservatee, Bibiano Becerra (Conservatee). (Prob. Code, §§ 1471, 1800 et seq.; Code Civ. Proc., §§ 177.5, 575.2.[1]) The court-appointed attorney, Parisa P. Farokhi (the CAA), sought these sanctions and attorney fees as a result of Appellant's alleged violations of California Rules of Professional Conduct, rule 2-100(A), through her conduct of continuing to contact Conservatee after the CAA had already been appointed to represent him and had requested other counsel to communicate with him only through her.[2] After issuing an order to show cause, the probate court imposed against Appellant $1,000 in sanctions in favor of the court and $2,587.50 in attorney fees payable to the CAA.

Appellant argues the awards of monetary sanctions and fees are unsupported by statutory authority or the record, in the form of a proven violation of an existing lawful court order, as opposed to a different finding by the probate court of her violation of a rule of professional conduct that could lead to attorney disciplinary proceedings. (§§ 177.5, 575.2; Bus. & Prof. Code, § 6076 et seq.) Under all the relevant circumstances, we agree that the

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

[2] All further rule references are to the California Rules of Professional Conduct unless otherwise specified. Rule 2-100(A) provides that a member, while representing a client, "shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer."

probate court failed to follow proper procedures in giving notice of the proposed sanctions and in awarding them for the express or implied reasons disclosed by the record. The orders are legally unsupportable and must be reversed with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

The background facts for this continuing proceeding are well known to the court and parties, and since the merits of the conservatorship issues are not before us, only a brief summary need be given here. We previously issued an unpublished opinion in *Conservatorship of Becerra* (Apr. 9, 2009, D052972), the "conservatorship case," describing Conservatee's brain injury sustained in an industrial accident. We also concurrently resolved an appeal in a related case involving the removal of Appellant as trustee of a trust holding Conservatee's personal injury settlement proceeds (*Donnelly v. Negrete* (Apr. 8, 2009, D053018) [nonpub. opn.]). In another nonpublished opinion, *Conservatorship of Becerra* (June 17, 2009, D053574), we upheld an attorney fees award to the CAA, payable from the trust. All these are referred to as "our previous opinions."[3]

The original petition for conservatorship was filed in November 2007 by Vida F. Negrete, R.N., Ph.D. (a professional fiduciary and the client of Appellant; referred to here as Negrete). By court appointment, the CAA began to appear for Conservatee in February 2008. Eventually, in March 2008, Negrete withdrew her petition, but after contested proceedings by a different petitioner (who was supported by different family members), Gerry Donnelly was appointed as conservator. The court then appointed Donnelly to replace Negrete as trustee of Conservatee's assets. While those hearings were still going on, the events giving rise to these sanctions orders took place.

On April 4, 2008, Appellant, acting for Negrete, attended a hearing on her motion to have an expert witness appointed to determine Conservatee's true preferences and wishes. (Evid. Code, § 730.) At that time, the other conservatorship petition was still pending, and the CAA had filed a report dated March 11, 2008, for a proposed hearing on March 14, which had been continued until April 4. There were conflicting expert opinions on the extent

---

[3] In the previous appeals, Appellant was contending on the merits that the appropriate procedural protections were not provided, such that Conservatee did not receive due process in the establishment of the conservatorship, and that he is being represented by parties, including the CAA, who do not advocate his real wishes. Appellant also argued she should have been allowed to pursue separate trust proceedings in Los Angeles. Those contentions were unsuccessful and those opinions became final in May 2009. The Supreme Court denied review of *Donnelly v. Negrete, supra*, D053018, and *Conservatorship of Becerra, supra*, D052972, in July 2009.

to which a conservatorship should be established, based on the mental state of Conservatee, who was consenting to the procedure in general, but remained unclear about whom he wanted to act as his conservator. At the April 4 hearing, the court denied Appellant's request on behalf of Negrete to have the expert witness appointed, ruling there was no justification for the expense and no current contested trial set. (Evid. Code, § 730.) Another conservatorship hearing was scheduled for April 11.

On April 8, the CAA filed a supplemental report for the April 11 hearing, stating that at the April 4 hearing, Appellant had contacted Conservatee without obtaining permission from his attorney, the CAA, although the CAA had requested that all contacts with him be made through her. Appellant had obtained translations into Spanish of the conservatorship reports and showed them to Conservatee, since she disagreed with them, and she did so without the consent or knowledge of the CAA. The CAA contended in her supplemental report that this conduct interfered with her representation of Conservatee, and therefore she requested an order to show cause for sanctions or a contempt ruling, on the grounds that Appellant had violated rules of professional conduct in that manner. (Rule 2-100(A).)

At the April 11 hearing, the CAA explained to the probate court that Conservatee was present at the courthouse but was staying out in the hall and did not want to attend the hearing because he was frustrated and upset by being questioned by Appellant and other family members, so that he did not feel the CAA was protecting him.

Based on the CAA's representations at the April 11 hearing about Appellant's contacts with Conservatee, the court (Judge Brown) announced that an order to show cause regarding sanctions against Appellant would be heard May 30, and that opposition would be allowed. On April 15, the court clerk served two written notices of the order to show cause regarding sanctions, citing sections 177.5 and/or 575.2. Both orders were dated April 14 and signed by Judge Cline. One order was printed on a court form and stated that the hearing would be held in Department N-04 (Judge Cline's dept.), but it did not fill in the blanks regarding the basis for the sanctions. The typed order gave similarly general notice, except that the matter would be heard in Department N-03 (Judge Brown's dept.) regarding the issuance of sanctions. Other hearings on the conservatorship issues were set for April 25 and May 30, as shown by augmented material in the record.

Meanwhile, beginning May 6, 2008, Appellant was making efforts to disqualify Judge Brown, pursuant to section 170.1, contending in her statement that his impartiality might reasonably be questioned. On May 12, Judge Brown struck the statement of disqualification for lack of service in accordance with the statutory requirements or for an inadequate showing of legal

grounds for disqualification. (Most of the record in this case is supplied as exhibits to Appellant's statements of disqualification.)

On May 19, Appellant filed her opposition to the sanctions request, arguing that the notices of hearing were defective because they were blank with regard to the reasons sanctions were being considered. She also contended that no specific orders had been violated, and her acts of advocacy as counsel were not properly the subjects of sanctions under section 177.5. In response, the CAA filed objections to the opposition, relying on section 128.5 and claiming that (1) Appellant was making it difficult for her to represent Conservatee, (2) Appellant must have known the reasons for her sanctions request, and (3) Appellant had harassed her by filing and serving a State Bar complaint against her, in retaliation. The CAA submitted a fees request for 13 hours of time at $225 per hour. (See also § 128.7.)

On May 30, the sanctions matters came on for hearing at 8:30 a.m. in Department N-03 before Judge Brown. The CAA reported that she had seen Appellant in the hallway, and the bailiff offered to go look for her. Judge Brown responded that he saw no reason to track her down, because she had been given notice as to the time and department regarding the order to show cause on sanctions. The CAA then argued that Appellant had willfully violated rules of professional conduct, had failed to appear at the hearing, and was unjustifiably claiming in her opposition papers that she did not know why the order to show cause had been issued. At 8:40 a.m., Judge Brown ordered that Appellant pay $1,000 in sanctions to the clerk of the court within 30 days, and pay attorney fees to the CAA in the amount of $2,587.50.

The same morning, Appellant appeared in Judge Cline's courtroom (Dept. N-04), and told the court that there was an order to show cause pending against her there, based on the notice she had received, and based on Judge Cline's April 30 order that he would be hearing all matters in the related conservatorship and trust proceedings. The court clerk responded that the order to show cause had been set for Department N-03, but Appellant said she had not noticed that the documents were inconsistent. Judge Cline took a recess, looked for the file, and determined that some sanctions orders had already been made in Judge Brown's department that day, so he directed Appellant to appear in Judge Brown's Department N-03 on June 20 at 8:30 a.m., regarding any and all matters relating to the order to show cause. Appellant objected that Judge Cline was supposed to be hearing all the conservatorship and trust matters, but he responded that Judge Brown would be hearing the order to show cause and any matters relating to it. Appellant argued that the order to show cause had left blank the explanation portion of the reasons why sanctions were being considered, and she requested further notice of the grounds, which was denied. Judge Cline also declined to vacate the order previously made by Judge Brown.

At the scheduled hearing in Department N-03 on June 20, Appellant appeared and personally delivered to Judge Brown her second statement of grounds for his disqualification. Judge Brown stated that he was nevertheless considering the sanctions matter to be properly before him, as a motion for reconsideration of his June 13 written order as it related to attorney fees and sanctions, and he ruled that it would remain a valid order, since no disqualification had yet been accomplished. Appellant stated that she was not aware that she had made a reconsideration motion, and that Judge Brown should disqualify himself. She also objected that she had previously properly appeared in Department N-04 and had requested further notice of the basis for sanctions, which was not provided. At the end of the hearing, the sanctions and fees as already ordered remained in effect.

On June 24, Judge Brown issued an order striking the second statement of disqualification, citing a lack of support for any challenge for cause against him.

On July 31, Appellant filed her notice of appeal of the May 30, June 13 and June 20 orders. These collateral orders are final determinations of the liabilities of the sanctioned party and are appealable. (§ 904.1.) The respondent is the CAA, who has filed the only opposing brief.

Pending appeal, we denied consolidation of this appeal with the previous conservatorship and trust matters, or with the appeal of the attorney fees order. We also denied an application by Appellant to have separate appellate counsel appointed for Conservatee, which she argued was necessary due to her own lack of confidence in the CAA.

## DISCUSSION

### I

### STANDARDS OF REVIEW; ISSUES PRESENTED

■ The orders to show cause issued by the probate court put Appellant on notice that imposition of sanctions was being considered under sections 177.5 and/or 575.2, "each of which requires a knowing violation of a valid order of the court without good cause or substantial justification." (*Winikow v. Superior Court* (2000) 82 Cal.App.4th 719, 726 [98 Cal.Rptr.2d 413] (*Winikow*).)[4] Appellant argues the fees and sanctions orders are unsupported

---

[4] Section 177.5 provides: "A judicial officer shall have the power to impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), notwithstanding any other provision of law, payable to the court, for any violation of a lawful court order by a person,

by statutory authority and/or the record, and represent an abuse of discretion because under these circumstances, no existing lawful court order was violated. At the outset, we emphasize that the issues before us are narrow and do not encompass the entire scope of the conservatorship proceedings, or any judicial disqualification issues. We are concerned here only with the procedural validity of the attorney fees and sanctions orders issued May 20, as they were confirmed June 13 and 20.

Before discussing the various statutory authorizations for an award of such sanctions, we first take note that although the parties' briefs have discussed the effect and proof requirements of sections 128.5 and/or 128.7, those sections are inapplicable here. Section 128.5 was a predecessor statute to section 128.7 that authorized awards of sanctions for certain litigation conduct that took place before 1995. (See *Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 164–165 [80 Cal.Rptr.3d 812] ["Section 128.5 has no application to cases filed on or after January 1, 1995, while section 128.7 applies solely to attorney misconduct in the filing or advocacy of groundless claims made in signed pleadings and other papers."]; *Bauguess v. Paine* (1978) 22 Cal.3d 626, 637–638 [150 Cal.Rptr. 461, 586 P.2d 942] [holding that a court's inherent power to supervise judicial proceedings does not include the power to award attorney fees as sanctions for attorney misconduct, absent specific legislative authorization or agreement of the parties].)

Instead, the proper approach for evaluating the arguments on appeal requires us to read sections 177.5 and/or 575.2, and their requirements for knowing violations of valid court orders, together with the applicable Rules of Professional Conduct that the probate court was apparently attempting to enforce, through this imposition of sanctions.[5] The jurisdictional facts are not disputed under these circumstances, and this court can properly evaluate, de novo, whether the statutory prerequisites for such an award have been met. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799–801 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

Alternatively, we may properly evaluate the record to determine if it contains substantial evidence to support the trial court's factual findings on

done without good cause or substantial justification. This power shall not apply to advocacy of counsel before the court. For the purposes of this section, the term 'person' includes a witness, a party, a party's attorney, or both. [¶] Sanctions pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers; or on the court's own motion, after notice and opportunity to be heard. An order imposing sanctions shall be in writing and shall recite in detail the conduct or circumstances justifying the order."

[5] Section 575.2, subdivision (a), permits a court's local rules to prescribe sanctions, including penalties or payment of opposing counsel's attorney fees, for noncompliance with those rules. Neither party has cited to any local rule that was not obeyed here.

sanctions. (*West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 697–698 [3 Cal.Rptr.2d 790] [where a party challenges the factual underpinnings of a trial court's ruling, the appellate court assesses the record for substantial evidence to support the court's express or implied findings].) Absent a proper basis for those findings, a sanctions award represents a prejudicial abuse of discretion. (*Moyal v. Lanphear* (1989) 208 Cal.App.3d 491, 501 [256 Cal.Rptr. 296] (*Moyal*) [such discretion must be exercised in a reasonable manner with one of the statutorily authorized purposes in mind, and it must be guided by existing legal standards as adapted to current circumstances]; *Winikow, supra,* 82 Cal.App.4th at p. 726.)

"[A] trial court's exercise of discretion will not be disturbed unless the record establishes it exceeded the bounds of reason or contravened the uncontradicted evidence [citation], failed to follow proper procedure in reaching its decision [citation], or applied the wrong legal standard to the determination [citation]." (*Conservatorship of Scharles* (1991) 233 Cal.App.3d 1334, 1340 [285 Cal.Rptr. 325].) A discretionary ruling will not be reversed merely because of a difference of opinion between the appellate tribunal and the trial judge. (*People v. Stewart* (1985) 171 Cal.App.3d 59, 65 [215 Cal.Rptr. 716].) "Inherent in our review of the exercise of discretion in imposing monetary sanctions is a consideration of whether the court's imposition of sanctions was a violation of due process. [Citation.]" (*Moyal, supra,* 208 Cal.App.3d at p. 501.)

II

*ANALYSIS*

█ The statutory prerequisites for imposition of sanctions for violation of a valid court order require us to identify the subject order, as well as the adequacy of notice given of the sanctions proceeding. This record shows that the hearings leading up to the May 30 award of sanctions dealt with an assortment of conservatorship issues. From April 4 until the April 11 hearing, when the order to show cause was issued, the conservatorship litigation addressed the effect of the two competing petitions (filing and withdrawal of Appellant's petition, filing of Donnelly's competing petition, and submission of reports by the CAA and the probate court investigator). The supplemental report of the CAA was filed April 8 for a hearing on April 11, so the order to show cause must have been based on the April 4 activities. As far as the record discloses, the only possible court order that Appellant could be deemed to have violated as of April 11 would have been the February order

for appointment of the CAA, which led to the professional responsibility issues arising from Appellant's continuing contacts with Conservatee on April 4.[6]

■ The probate court's order was largely or entirely based on its belief that the Rules of Professional Conduct had been knowingly violated and this amounted to a violation of some court order or a rule of court. Although the standards of professional responsibility prepared by the State Bar are subject to approval by the Supreme Court, and as such are binding upon counsel, they are not normally regarded as court orders or local rules of the type referred to in sections 177.5 and 575.2, for purposes of awarding sanctions. Under Business and Professions Code sections 6075 and 6076, State Bar procedures for providing hearings and determining accusations against members of the State Bar are coordinated with the disciplinary authority of the Supreme Court: "The rules of professional conduct adopted by the board, when approved by the Supreme Court, are binding upon all members of the State Bar. [¶] For a wilful breach of any of these rules, the board has power to discipline members of the State Bar by reproval, public or private, or to recommend to the Supreme Court the suspension from practice for a period not exceeding three years of members of the State Bar." (Bus. & Prof. Code, § 6077; see *id.*, § 6086.7.)

■ Normally, the trial courts do not have the responsibility of directly enforcing the rules of professional responsibility, even when violations of court orders are alleged, since disciplinary authority is lodged in the Supreme Court, which has delegated it to the State Bar Court. (Bus. & Prof. Code, §§ 6087, 6100; Cal. Rules of Court, rule 9.10(g).) Noted commentators explain: " 'A wilful disobedience or violation of an order of the court requiring (an attorney) to do or forbear an act connected with or in the course of his profession, which he ought in good faith to do or forbear . . .' is cause for disbarment or suspension. [Citation.] [¶] . . . [¶] . . . For an attorney to be disciplined under this statute, the State Bar must prove by clear and convincing evidence that (i) the attorney wilfully disobeyed a court order; and (ii) the order required the attorney to do or forbear an act in the course of his profession 'which he ought in good faith to have done or not done.' [Citations.]" (Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2008) ¶¶ 11:11 to 11:12, p. 11-3 (rev. # 1, 2008), italics omitted.)

---

[6] Because the merits of the underlying conservatorship disputes are not before this court in this appeal, and because the sanctions orders are procedurally infirm, we need not inquire into whether Appellant had any "good cause or substantial justification" to make the unauthorized communications with Conservatee, in terms of advocacy of counsel, as she continues to argue. (§ 177.5.)

These commentators further explain, "The State Bar Court is an administrative agency affiliated with the State Bar, established by the State Bar Board of Governors to act in place of the State Bar Board of Governors in disciplinary and reinstatement proceedings. [Citation.]" (Vapnek et al., Cal. Practice Guide: Professional Responsibility, *supra*, ¶ 11:271, p. 11-30.2 (rev. # 1, 2008).) For example, in *In re Aguilar* (2004) 34 Cal.4th 386, 394–395 [18 Cal.Rptr.3d 874, 97 P.3d 815], the Supreme Court sanctioned an attorney's misconduct (disobeying a court order to appear) with a contempt ruling and a fine, and referred the matter to the State Bar for further disciplinary investigation. (Bus. & Prof. Code, § 6086.7.)

■ In our case, although there was a court order appointing the CAA, and the CAA had the right to request other attorneys in the case to make contact with her client only through her, violations of that request would amount to violations of the Rules of Professional Conduct, not of court orders. (Rules 1-100(A), 2-100.) The probate court's evident interpretations of sections 177.5 and 575.2, to justify the setting of a sanctions hearing and then to find Appellant had violated court orders on that basis, were incorrect and in excess of the court's discretion. First, " '[The] adequacy of notice should be determined on a case-by-case basis to satisfy basic due process requirements. The act or circumstances giving rise to the imposition of expenses must be considered together with the potential dollar amount.' [Citation.]" (*Barrientos v. City of Los Angeles* (1994) 30 Cal.App.4th 63, 70 [35 Cal.Rptr.2d 520].) The oral and written orders to show cause lacked any such specific references to the underlying order said to be violated.

Even assuming that some kind of actual notice of exposure to sanctions was given to Appellant, based on her appearance at the April 11 hearing and her acknowledged receipt of the written orders to show cause, the record is still unclear what particular order was being enforced by the court. The Rules of Professional Conduct do not create any new civil causes of action, nor "create, augment, diminish, or eliminate any substantive legal duty of lawyers or the non-disciplinary consequences of violating such a duty." (Rule 1-100(A).) Thus, even if the probate court had a basis to conclude that Appellant had previously violated rule 2-100(A) (by communicating about the case with a party she knew to be represented by another lawyer in the matter, without consent), that finding would not be tantamount to creating disobedience of a valid court order, or a violation which could properly form the basis of an award of monetary sanctions or attorney fees to the other lawyer, within the meaning of sections 177.5 and/or 575.2.

■ Finally, under section 177.5, "[a]n order imposing sanctions shall be in writing and shall recite in detail the conduct or circumstances justifying the order." This was not done here, since the June 13 written order merely refers

to "good cause for issuance of" sanctions and fees, and the May 20 and June 20 minute orders (amended) merely recite that sanctions were ordered. (*Caldwell v. Samuels Jewelers* (1990) 222 Cal.App.3d 970, 977–978 [272 Cal.Rptr. 126].) Although the CAA's respondent's brief on appeal requests that if the order must be reversed, remand for a further evidentiary hearing should be allowed, we decline to order any such further hearings, in light of our conclusion that the sanctions and fees orders were at all times ineffective, invalid and void under the applicable statutory criteria. ■ Due to the probate court's lack of compliance with the legal standards and purposes authorized by sections 177.5 and 575.2, the orders are legally erroneous, unsupported by the record, and a prejudicial abuse of discretion. (*Winikow, supra*, 82 Cal.App.4th 719 at p. 726; *Moyal*, 208 Cal.App.3d 491 at p. 501; *Conservatorship of Scharles, supra*, 233 Cal.App.3d at p. 1340.)

## DISPOSITION

The orders are reversed with directions to vacate them and enter new orders denying any award of sanctions or fees pursuant to the April 11 or 14 orders to show cause. Each party to bear its own costs on appeal.

Nares, J., and Aaron, J., concurred.

A petition for a rehearing was denied August 4, 2009.