Filed 5/2/13  Player v. County of Los Angeles CA@/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| TYISHA PLAYER et al., | B238297 |
| Plaintiffs, | (Los Angeles County Super. Ct. No. BC435513) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant; | |
| RICKEY IVIE et al., | |
| Objectors and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Richard L. Fruin, Jr., Judge.  Affirmed.

Ivie, McNeill & Wyatt, Rickey Ivie, Robert H. McNeill, and Davida M. Frieman for Objectors and Appellants.

This appeal concerns an order imposing monetary sanctions under Code of Civil Procedure section 177.5 in the amounts of $1,100 and $1,500 on counsel for the defendant in a wrongful death action. The trial court found that attorney Davida Frieman (Frieman) violated an in limine order excluding all evidence of the decedent's arrests, convictions, and incarcerations without first obtaining the court's approval, and that Frieman's supervising attorney, Rickey Ivie (Ivie), knowingly violated the order.

The record discloses no abuse of discretion by the trial court. We therefore affirm the monetary sanctions order.

## BACKGROUND

**The in limine order**

Appellants Frieman and Ivie were the attorneys of record for the County of Los Angeles in an underlying wrongful death action brought by the spouse and children of decedent Woodrow Wilson Player (Player). Player was shot and killed by Los Angeles County Sherriff's Department deputies while attempting to flee during a felony stop following a 911 call from Player's former girlfriend that he had pointed a gun at her and threatened to kill her.

The plaintiffs in the underlying case filed a motion in limine seeking to exclude evidence concerning any of Player's arrests or criminal convictions. On September 13, 2011, the trial court issued its tentative ruling excluding all such evidence without prior court approval. The tentative ruling provides in relevant part:

> "Information that Player was on parole is relevant, if a condition of the parole was that he not be in possession of firearms. The fact that he might have been charged with domestic violence is relevant, but even if such a charge was not filed or sustained Player's carrying of a firearm may have violated parole and resulted in a return to jail/prison. Incarcerations, including potential incarcerations, are relevant to Player's availability to provide comfort, support and companionship to plaintiffs. Convictions probably should be limited to those that support the likelihood of lengthy incarceration for parole violation or for armed assault or domestic violence (if charged and convicted)."

> "**Defendants are to advise the court at the hearing of precisely what arrests, convictions and/or incarcerations of Player they intend to**

2

**put into evidence (through what witness, what documents).** The court will exclude all such evidence until defendants advise the court what evidence will be offered and to [*sic*] court allows the evidence." (Original bolding.)

The trial court adopted its tentative ruling as its final written ruling, which it issued to counsel on September 15, 2011.

**Ivie's opening statement**

The trial commenced with the parties' opening statements on September 20, 2011. As of that date, Ivie and Frieman had not advised the trial court of the precise arrests, convictions or incarcerations of Player they intended to put into evidence, and the trial court accordingly had not allowed any such evidence. During Ivie's opening statement, Ivie stated that "Mr. Player's arrest record extends from the time he was 12 years old. It includes such offenses as robbery." Plaintiffs' counsel objected, and the trial court sustained the objections based on the in limine order.

Later that same day, the following exchange occurred outside the presence of the jury:

"THE COURT: [W]e talked last Friday about the arrest history. We were going to have an agreement on what history could be put into evidence, and you were going to make an offer as to what you wanted to put into evidence. Today in your opening statement you went back to his first arrest as a juvenile at age 12. What is the list that you're going to want to put into evidence? I don't want the entire list. I want the reduced list that might be pertinent to the issues.

"MR. IVIE: I have the -- his arrest record.

"THE COURT: I'm sorry. I have his arrest record --

"MR. IVIE: Right.

"THE COURT: -- In one of the motions in limine. The question is --

"MR. IVIE: Which ones are relevant?

3

"THE COURT:  -- Which ones are relevant?  You were going to offer me a list, and I haven't seen the list.  I have other things to do, so it kind of slips out of my mind, but now that I'm reminded about it by the opening statements.  I want to know what's going to happen.  So I'm putting that on my list, too, so we'll talk about that later."

**Frieman's cross-examination**

The case proceeded to the plaintiffs' case-in-chief, during which plaintiffs' counsel elicited testimony concerning Player's incarceration from Latoria Williams, the mother of Player's child, Justin.

"[PLAINTIFFS' COUNSEL]:  And when Justin was born, was Mr. Player present?

"[WILLIAMS]:  No.

"[COUNSEL]:  [W]here was Mr. Player at that time?

"[WILLIAMS]:  He was in jail.

"[¶] . . . [¶]

"[COUNSEL]:  All right.  And later on in 2006, did you learn that Mr. Player had returned to jail?

"[WILLIAMS]:  Yes.

"[COUNSEL]:  And how much time was it from the time Mr. Player first saw Justin until the time he had to go back again to prison?

"[WILLIAMS]:  I'm not sure if it was two weeks or a month or two, but it was -- he was only out for a short while.

"[¶] . . . [¶]

"[COUNSEL]:  All right.  And then at some time Mr. Player went back into custody; correct?

"[WILLIAMS]:  Yes.

4

"[COUNSEL]: And then at some point he was released?

"[WILLIAMS]: Yes.

"[¶] . . . [¶]

"[COUNSEL]: All right. And incidentally, for that year while Mr. Player was in prison, would you visit him with Justin?

"[WILLIAMS]: Yes."

During Frieman's subsequent cross-examination of Williams, the following exchange took place:

"[FRIEMAN]: And do you know why Mr. Player went back to jail?"

Plaintiffs' objection on the ground of relevance was overruled.

"[WILLIAMS]: You asked what -- what he got out of jail for?

"[FRIEMAN]: Correct.

"[WILLIAMS]: The last time?

"[FRIEMAN]: Correct.

"[WILLIAMS]: For murder."

Plaintiffs' counsel requested a sidebar conference during which they requested that Williams's testimony be stricken. The following exchange occurred outside the presence of the jury:

"[THE COURT]: Why were you eliciting this testimony?

"[FRIEMAN]: Umm, I simply inquired if she knew why he had gotten out of jail, what he was in jail for. This will be pertinent a little bit later --

"[THE COURT]: Look, the question is he wasn't convicted of the charge for which he was in jail at that point in time. Now I don't know the sequence of all the charges, but you do. And we decided beforehand that we weren't going to introduce evidence of any charge other than where

5

there was a conviction. You've introduced subject matter in this trial which is inappropriate and you knew it was inappropriate. I expect you to control your questions so that you're not going to elicit from this lay witness something the jury shouldn't hear. Was this deliberate?

"[FRIEMAN]: No. This was actually something that was going to come up when I spoke to Ms. Tyisha Player, because it has to do with their marriage and --

"[THE COURT]: The point is although he was arrested and although he was in jail awaiting trial and during trial, he wasn't convicted of that particular charge. I'm told that's the case. Is that correct?

"[FRIEMAN]: Yes. He was not convicted.

"[THE COURT]: And you've known this; is that correct?

"[FRIEMAN]: Yes, I knew he was not convicted."

The trial court declined a request by plaintiffs' counsel to instruct the jury that Frieman had engaged in a deliberate act of misconduct, stating: "Well, I don't know whether it was a deliberate act of misconduct or simply a lack of thought about what the witness was likely to say. This is cross-examination. It's not Ms. Frieman's witness. She has not been able to prepare the witness to give the responses that she would expect." The trial court ultimately instructed the jury as follows: "Mr. Player was not convicted of the charge of murder. The question asked by Ms. Frieman was inappropriate. I will strike the answer given by Ms. Latoria Williams, and you are not to consider what she has said in response to Ms. Frieman's question." Trial of the underlying case thereafter resumed.

**The order to show cause (OSC) and sanctions order**

On October 5, 2011, the trial court issued an OSC re assessment of monetary sanctions against Frieman and Ivie. The court's OSC cited violation of the court's September 15, 2011 ruling on plaintiffs' motion in limine excluding evidence of Player's arrests, convictions, and incarcerations unless approved in advance by the court. The court listed the following facts and circumstances justifying the OSC and supporting the imposition of monetary sanctions: Frieman, on September 22, 2011, using a written

6

script for her questions, elicited testimony during her cross-examination of Latoria Williams, the mother of Player's son, Justin, that Player was incarcerated on a murder charge shortly after Justin was born; Frieman had actual knowledge that her line of questioning would require Williams to reveal to the jury that Player was in jail at that time awaiting trial on a murder charge; Frieman knew that Player was acquitted of the murder charge and that the fact that he was charged with murder was both inadmissible and prejudicial to plaintiffs' case; Frieman knew that defense counsel had not provided to the court, as of that date, any list of the particular criminal charges or convictions suffered by Player that defendants wished to place into evidence; Ivie reviewed and approved Frieman's scripted cross-examination questions; and Ivie during his opening statement told the jury that Player was arrested at the age of 12, in violation of the court's in limine order.

Frieman and Ivie submitted declarations in opposition to the OSC. In his declaration, Ivie stated that he had reviewed the trial court's in limine order before giving his opening statement and concluded that he was not precluded from mentioning Player's juvenile arrests in his opening statement. Ivie further stated that he reviewed Frieman's cross-examination outline; that the outline was intended to be used during Frieman's cross-examination of Tyisha Player; that the question Frieman proposed "Do you know why decedent was in jail?" was intended to lay the foundation for an argument that Tyisha Player knew Player would be incarcerated for a long time and had rushed to marry him while he was incarcerated so she could obtain conjugal visits with him; that Frieman had not prepared an outline for cross-examination of Latoria Williams but used the outline she had prepared for Tyisha Player's cross-examination for that purpose. Frieman's declaration reiterated the explanation given in Ivie's declaration regarding her intent and purpose in questioning Williams as to whether she knew why Player was incarcerated.

Following a November 2011 hearing on the OSC, the trial court issued its written findings and rulings. The trial court found that "Mr. Ivie as an attorney of 35 years standing knows that counsel may not state in an opening statement information that has

7

been ruled inadmissible. He says he scrutinized the in limine motion, the court's order and CACI instructions for guidance as to whether he nonetheless could mention decedent's arrests and convictions in his opening statement. However, inexplicably, he never sought guidance from the court on that matter." The court further found that Ivie knew that juvenile arrests are inadmissible by statute (Evid. Code, § 1101), knew that inadmissible evidence cannot be revealed to the jury, knew that the court's order specifically prohibited disclosure of Player's criminal history unless first reviewed and approved by the court, and nevertheless disclosed Player's juvenile arrests in his opening statement to the jury. The trial court observed that defense counsel's justification for the admission of Player's convictions was to support their argument that the claims by his wife and children for loss of his love and society were diminished because Player was incarcerated for most of his adult life. That justification, the court noted, did not apply to Player's juvenile arrests, which occurred before he married and fathered children. The trial court therefore concluded that Ivie's intent was to prejudice the jury against Player with information Ivie knew was inadmissible.

With regard to Frieman's cross-examination of Latoria Williams, the trial court found defense counsel's explanations to be implausible. The court found that the questions Frieman planned to ask the witness were not relevant to the defense theory that plaintiffs' lengthy incarcerations diminished plaintiffs' damages because Frieman's proposed questions concerned an arrest relating to charges on which Player was subsequently acquitted. The trial court noted that at the hearing on the OSC Frieman advanced a different argument as to why she had questioned Williams about the reason for Player's incarceration. At the hearing, Frieman told the court her questions were relevant because they supported the defense argument that Tyisha Player's marriage to Player was a sham. That argument, the trial court reasoned, was "tenable only if the decedent was arrested for murder before the marriage occurred" but the record indicated that the marriage preceded Player's incarceration on the murder charge. The court concluded that Frieman had violated the court's in limine order and that Ivie, who

8

approved the particular questions Frieman planned to ask and supervised her at trial, was also responsible for the violation.

The trial court found that Ivie knowingly violated its in limine order and assessed monetary sanctions against him under Code of Civil Procedure section 177.5 in the mount of $1,500. The court further found that Frieman violated the in limine order and assessed monetary sanctions against her in the amount of $1,100. This appeal followed.

## DISCUSSION

## I. Applicable law and standard of review

Code of Civil Procedure section 177.5 provides in relevant part: "A judicial officer shall have the power to impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), notwithstanding any other provision of law, payable to the court, for any violation of a lawful court order by a person, done without good cause or substantial justification. This power shall not apply to advocacy of counsel before the court." Imposition of monetary sanctions for failing to obey a court order is within the discretion of the trial court. (*People v. Ward* (2009) 173 Cal.App.4th 1518, 1527.) "'[A] trial court's exercise of discretion will not be disturbed unless the record establishes it exceeded the bounds of reason or contravened the uncontradicted evidence [citation], failed to follow proper procedure in reaching its decision [citation], or applied the wrong legal standard to the determination [citation].' [Citation.]" (*Conservatorship of Becerra* (2009) 175 Cal.App.4th 1474, 1482.)

## II. Ivie's opening statement

Ivie contends his reference to Player's juvenile arrest at the age of 12 during his opening statement did not violate the in limine order, which is limited to the introduction of evidence and does not mention opening statements. His opening statement, Ivie maintains, was not evidence.

The scope of the trial court's in limine order is not as narrowly defined as Ivie suggests. The order required defense counsel to advise the trial court as to "precisely what arrests, convictions and/or incarcerations of Player they *intend* to put into evidence" and excluded all such evidence until they advised the court as to "what evidence will be

9

*offered.*" (Italics added.) Ivie's opening statement to the jury was a roadmap of the evidence he intended to offer at trial. "The purpose of an opening statement 'is to prepare the minds of the jury to follow the evidence and to more readily discern its materiality, force and effect.' [Citation.]" (*People v. Green* (1956) 47 Cal.2d 209, 215, overruled on another ground in *People v. Morse* (1964) 60 Cal.2d 631, 648-649 & fn. 2.) The terms of the order required him to seek and obtain court approval before presenting the proposed evidence to the jury. The absence of a specific reference to opening statements does not render the order vague nor did it immunize Ivie's statements to the jury.

Ivie claims that his reference to Player's juvenile arrests during opening statement was not prejudicial to the plaintiffs because plaintiffs' counsel had already mentioned Player's incarceration for a drug-related conviction. While the prejudicial effect of Ivie's statements may be relevant to the issue of whether a new trial was warranted (see *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800-802), it has no bearing on whether Ivie's conduct violated the court's in limine order and warranted the imposition of sanctions.

Ivie argues that the amount of monetary sanctions assessed against him -- the statutory maximum of $1,500 -- "exceeds the bounds of reason" in light of the circumstances, given that the trial court did not admonish him of any improper conduct during or after his opening statement. That the trial court chose not to highlight the impropriety of Ivie's remarks by interrupting his opening statement or by admonishing him in the presence of the jury did not diminish the seriousness of Ivie's violation. That violation, combined with Ivie's involvement in Frieman's violation of the order during her cross-examination of a witness, was a sufficient basis for the trial court's imposition of the maximum monetary sanction. The trial court's imposition of that sanction was not an abuse of discretion.

### III. Frieman's cross-examination

Frieman contends she had substantial justification for her violation of the in limine order and that the trial court erroneously found that she intentionally or knowingly violated the order. The trial court did not find Frieman to have knowingly violated the

10

in limine order.  It simply found her to have violated the order:  "The court finds Ms. Frieman violated the in limine order."[1]

The trial court considered and rejected Frieman's purported justification for the violation.  Frieman's justification for eliciting testimony regarding the reason for Player's most recent incarceration was to demonstrate that the witness believed Player would be incarcerated for a long time, thereby diminishing the plaintiffs' claims for damages for the loss of Player's love, comfort, and companionship.  Frieman knew, however, that the incarceration that was the subject of her inquiry was for a murder charge on which Player was ultimately acquitted.

There is substantial evidence in the record to support the trial court's factual findings on the imposition of sanctions.  (*West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 697-698 [where a party challenges the factual underpinnings of a trial court's ruling, the appellate court reviews the record for substantial evidence to support the court's express or implied findings].)  The record discloses no abuse of discretion in either the imposition or in the amount of monetary sanctions.

### DISPOSITION

The order imposing monetary sanctions is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST

---

[1]     In contrast, the trial court did find Ivie to have knowingly violated the order:  "The court finds Mr. Rickey Ivie knowingly violated the court's in limine order."

11