Filed 9/30/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff,<br><br>v.<br><br>MARCUS DARNELL HOOPER et al.,<br><br>      Defendants and Respondents;<br><br>STATE DEPARTMENT OF STATE HOSPITALS,<br><br>      Objector and Appellant. | A153313<br><br>(Contra Costa County<br>Super. Ct. Nos. 02-324174-2, 01-180772-6, 01-178384-4, 01-179503-8, 01-181833-5, 01-180697-5, 05-161530-1, 02-322144-7, 02-322216-3, 05-170130-9, 01-179828-9, 04-189749-5, 05-160983, 02-324087-6, 02-324344-1, 02-325344-0, 02-324297-1) |

The Department of State Hospitals (DSH) oversees state hospitals that provide treatment for individuals found incompetent to stand trial (IST). A Standing Order in Contra Costa County mandates that IST defendants in the county be admitted to a state hospital no more than 60 days after the date the defendant is committed, provided DSH receives the defendant's records within five days of commitment. (*In re Loveton* (2016) 244 Cal.App.4th 1025, 1036.)

In this case, a class of IST defendants sought sanctions against DSH pursuant to Code of Civil Procedure section 177.5, claiming they were not timely admitted to a state hospital.[1] The trial court found that DSH violated the Standing Order as to 11 of the defendants and imposed sanctions in the amount of $1,500 per defendant, for a total of

_____

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

$16,500.  DSH appeals, contending that the trial court's sanctions orders were unauthorized under section 177.5.  DSH further asserts that the orders constitute an abuse of discretion and a violation of DSH's right to due process.  We reverse the sanctions order as to one defendant, but otherwise affirm.

## I.     BACKGROUND

### A.     *Legal Background*

A court may not try or sentence a defendant in a criminal proceeding while the defendant is incompetent.  (Pen. Code, § 1367, subd. (a).)  If a defendant is found IST, the court shall commit the defendant to DSH.  (*Id*., § 1370, subd. (a)(5).)  Prior to the patient's admission, the court must provide DSH with a "1370 packet," which includes copies of the commitment order, criminal history information, psychiatric examination reports, and medical records.  (*Id*., § 1370, subd. (a)(3).)  DSH is required to report the defendant's progress toward recovery to the court within 90 days of commitment.  (*Id*., § 1370, subd. (b)(1).)  Until the court declares the defendant restored to competency, the underlying criminal proceeding is suspended.  (*Id*., § 1370, subd. (a)(1).)

In 2014, several IST defendants who were subject to prolonged detention while awaiting hospital admission in Contra Costa County filed habeas petitions seeking relief. (*Loveton*, *supra*, 244 Cal.App.4th at pp. 1028, 1035.)  The court balanced petitioners' liberty interests against DSH's interests and ruled that DSH must admit IST defendants "within not more than 60 calendar days of the court's order of commitment provided the defendant's complete information packet has been received by the hospital within five court days of the commitment order."  (*Id.* at p. 1036.)  The court reasoned that a 60-day limit satisfies defendants' due process rights while allowing time for DSH to place each defendant and to prepare the 90-day reports.  (*Ibid.*)  DSH appealed; Division Two of this Court affirmed the 60-day requirement in 2016.[2]  (*Id.* at pp. 1045, 1047.)  Thus, although there is no statutory deadline for admission to DSH, the *Loveton* order is valid and

---

[2] The court affirmed the judgment but remanded the case for minor modifications to the order that are not relevant here.

applies to IST defendants committed to DSH in Contra Costa County. (*Id.* at pp. 1033, 1046.)

After the *Loveton* order became final, a class of 29 Contra Costa County defendants requested sanctions against DSH pursuant to section 177.5 for violating *Loveton*. The trial court in that case, *People v. Czirban* (Super. Ct. Contra Costa County, 2017, No. 05-151662-4 (*Czirban*))*,* interpreted the 60-day period as "commencing from the date DSH received the defendants' information packets and not from the date of commitment." After multiple hearings involving extensive briefing and witness testimony, the court found that DSH violated the *Loveton* order without good cause or substantial justification in 18 of the 29 cases. In August 2017, the trial court in *Czirban* issued its final decision imposing sanctions against DSH in the amount of $17,400. DSH did not appeal.

### B.      *Factual and Procedural Background*

The present case involves 11 IST defendants: Hooper, Martha, Martinez, Malloy, Riley, Saechao, Schulting, Starr, Wadley, White, and Wise, all of whom had been committed to DSH between March and August 2017. In June 2017, Wadley, Saechao, and Riley filed a Request for Sanctions Pursuant to CCP § 177.5 against DSH, seeking sanctions of $198.08 for each day past the 60-day *Loveton* requirement in order to cover the daily cost of housing an individual at the detention facility. In November 2017, additional defendants filed a Supplement to Request for Sanctions, which included an exhibit with the dates of 1370 packet receipt, dates of admission, and number of days exceeding *Loveton* for several of the defendants.

For each defendant, the trial court issued an Order to Show Cause Why Sanctions Should Not Be Ordered (OSC) to DSH. The court conducted hearings on the OSC on June 26, September 18, October 26, October 30, November 13, and November 17.

On September 18 and October 26, the trial court affirmed that it would follow *Czirban* and calculate the admission delay based on the date DSH received the 1370 packet. After DSH asserted that the dates proffered by defense counsel were incorrect, the court requested that both parties prepare documents as to the relevant dates. DSH

also repeatedly requested an evidentiary hearing to show good cause and substantial justification for its alleged violations. The trial court did not rule definitively on DSH's requests. At the end of October, the court sent a letter to DSH, attaching the exhibit from defendants' Request for Sanctions and asking whether DSH's records matched. DSH responded that defendants' dates were incorrect but did not provide any contrary evidence.

At 4:00 p.m. on the day before the final hearing, DSH submitted a document entitled "Response to Supplemental Request for Sanctions; Request for an Evidentiary Hearing." The court marked this document as "received" but not "filed" due to its untimeliness. On November 17, defendants provided seven exhibits showing the date of packet delivery, date of admittance, and number of days exceeding *Loveton* for each defendant; DSH presented no evidence. DSH argued that three of defendants' documents were not "competent" or not "properly authenticated." The trial court admitted all the defendants' exhibits, relying on them to find DSH in violation of the *Loveton* order. The court denied DSH's request for an additional hearing to present its own evidence.

The court issued 11 written sanctions orders in a total amount of $16,500. Each order included the date the court issued the OSC, a statement that the court "incorporated by reference" the *Czirban* decision, and a statement that the court imposed a fine of "$100 per day for every day past the 60th day admission requirement."

DSH appeals the sanctions orders.

## II. DISCUSSION

### A. The Trial Court Properly Imposed Sanctions Under Section 177.5.

As a threshold matter, we note that defendants sought sanctions due to DSH's alleged failure to comply with *Loveton*, which required an IST defendant to be admitted " 'within not more than 60 calendar days of the court's order of commitment provided the defendant's complete information packet has been received by the hospital within five court days of the commitment order.' " (*Loveton*, *supra,* 244 Cal.App.4th at p. 1036) The trial court in *Czirban* reinterpreted *Loveton* to require DSH to admit IST defendants

4

within 60 days of its receipt of such defendants' 1370 packet—a modification that the trial court in this case adopted, apparently without challenge from either party.[3] Because the sanctions requests were founded upon DSH's failure to comply with *Loveton* (and not *Loveton* as refashioned by the trial court in *Czirban*), we review the record to determine whether the trial court erred in imposing sanctions based on *Loveton*.

### 1.    Standard of Review

We review orders imposing sanctions for abuse of discretion.  (*People v. Ward* (2009) 173 Cal.App.4th 1518, 1527 (*Ward*).)  The trial court must exercise its discretion in a "reasonable manner with one of the statutorily authorized purposes in mind and must be guided by existing legal standards."  (*Moyal v. Lanphear* (1989) 208 Cal.App.3d 491, 501.)  A mere difference of opinion between the appellate and trial courts is insufficient to warrant reversal.  (*Conservatorship of Becerra* (2009) 175 Cal.App.4th 1474, 1482 (*Becerra*).)  Questions of law, on the other hand, are subject to de novo review.  (*Id.* at p. 1481.)  When a trial court relies on a statute as authority to award sanctions, we review the interpretation of the statute de novo.  (*Ibid.*)

### 2.    Authority to Sanction a Non-Party

Section 177.5 authorizes the imposition of reasonable monetary sanctions up to $1,500, payable to the court, "for any violation of a lawful court order by a person, done without good cause or substantial justification."  (Code of Civ. Proc., § 177.5.)  The statute further provides:  "For the purposes of this section, the term 'person' includes a witness, a party, a party's attorney, or both."  (*Ibid.*)  DSH asserts that the trial court had

---

[3] The *Loveton* court affirmed the original trial court order and remanded "with directions to modify the order as necessary to conform" to new statutory provisions. (*Loveton, supra*, 244 Cal.App.4th at p. 1029.)  As counsel acknowledged at oral argument, the only change pursuant to this directive was that the Superior Court's standing order now applies to all DSH hospitals, not merely the Napa facility at issue in the *Loveton* appeal.

no authority to impose sanctions under section 177.5 because DSH was not a witness, party, or attorney in the criminal case or the competency proceedings.[4]

DSH relies primarily on *Vidrio v. Hernandez* (2009) 172 Cal.App.4th 1443 (*Vidrio*) to argue that the court had no authority to impose sanctions. In *Vidrio*, which involved an underlying lawsuit between an insured and an injured third party, the trial court imposed sanctions on the insured's insurance company for failing to participate in good faith in a mandatory settlement conference. (*Vidrio, supra*, 172 Cal.App.4th at pp.1450–1452.) The court of appeal reversed, holding that the insurer's conduct "did not violate any court order"—a requirement for section 177.5 sanctions. (*Id.* at p. 1455.) *Vidrio* is thus distinguishable, because the trial court here sanctioned DSH for its violation of the *Loveton* order.

As noted by DSH, *Vidrio* also explained that sanctions against the insurance company were unwarranted because "section 177.5 provides sanctions may be awarded against a 'person,' defined to include a witness, a party, a party's attorney, or both,' " and the insurance company "does not fall within any of these categories." (*Vidrio, supra*, 172 Cal.App.4th at p. 1445.) But the *Vidrio* court's observation regarding the statutory text fails to recognize that section 177.5 does not specifically define the term "person" with an *exclusive* list of qualifying entities. Instead, section 177.5 merely states that the term "includes" a witness, a party, a party's attorney, or both, indicating that the subsequent examples provide guidance as to who may be considered a "person." By its terms, the statute does not purport to exclude any entity not specifically listed—as it would, for example, if it stated that the term "person" is "defined as," "means," or "includes only" a witness, a party, a party's attorney, or both. *Vidrio* thus does not convince us that the trial court erred.

We also disagree with DSH's argument that the legislature's amendment to section 177.5 during the drafting process demonstrates an "unmistakable intent" to limit

---

[4] DSH arguably waived this argument by failing to raise it with the trial court. However, as statutory interpretation is purely a legal question and as both parties have fully briefed the issue, we exercise our discretion to address it.

the applicability of the statute.[5]  DSH appears to be correct that an early version of section 177.5 stated that " 'person' includes, *but is not limited to*, a party, a party's attorney, or both."  (Assem. Bill No. 3573 (1981–1982 Reg. Sess.) as introduced Mar. 15, 1982, italics added.)  The final bill, as amended, removed the phrase "but is not limited to."  (§ 177.5)  But the legislative history relied on by DSH does not specify the reason for eliminating those (seemingly redundant) words; some of the documents submitted by DSH indicate the legislature's concern that a broad statute would allow sanctions against "people not directly involved" in an action, such as "reporters, demonstrators, or courtroom observers."  (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 3573 (1981–1982 Reg. Sess.) as amended Apr. 29, 1982.)  In our view, in light of DSH's statutory obligation in the criminal justice process relating to IST defendants, DSH resembles a party far more than it resembles one "not directly involved" in an action, such as a reporter, demonstrator, or courtroom observer.  Indeed, because Penal Code section 1367 bars courts from trying and sentencing IST defendants, DSH's provision of timely treatment plays an essential auxiliary role in the proper functioning of the criminal justice system.

Finally, DSH argues that the proper remedy for a non-party's violation of a court order is contempt under section 1209, not a sanctions order under section 177.5.  The

---

[5] We grant in part DSH's request for judicial notice of materials relating to the legislative history of section 177.5.  Specifically, the request for judicial notice is granted as to the following documents attached as Exhibit A to DSH's request for judicial notice: (1) Assembly Bill No. 3573 (1981–1982 Regular Session), all versions dated March 15, 1982; and (2) the report by Assembly Committee on the Judiciary on Assembly Bill No. 3573 (1981–1982 Reg. Sess.) dated April 21, 1982.  The remainder of the documents included within Exhibit A are either unhelpful (such as summaries of the statute that shed no light on the language) or are inappropriate subjects of judicial notice (such as letters to the sponsor of the bill and miscellaneous documents from committee files).  (*Kaufman & Broad Communities, Inc. v. Performance Plastering*, *Inc.* (2005) 133 Cal.App.4th 26, 38–39 [letters to legislators and governor and materials from files of legislative committees and caucuses are not appropriate subjects of judicial notice].)  We further deny DSH's request for judicial notice as to Exhibit B, which is an order in another case involving a sanctions request against DSH.  A different court's order as to different IST defendants is irrelevant to whether the trial court erred in this case.

7

contempt statute applies to anyone who commits an act or omission constituting contempt, and encompasses witnesses, parties, and attorneys. (§ 1209.) Given that section 1209 and section 177.5 both specifically include parties and attorneys, a court's authority under the contempt and sanctions statutes cannot be mutually exclusive. Put another way, the fact that contempt may be another potential remedy does not render inappropriate the trial court's reliance on section 177.5.

In sum, we conclude that the court did not err in imposing sanctions under section 177.5.

### 3.   *Sufficient Details in a Sanctions Order*

DSH next argues that the sanctions orders failed to comply with section 177.5's requirement that the order "recite in detail the conduct or circumstances justifying the order." (§ 177.5.) DSH is correct that a "mere recitation of the words of the statute" or a statement such as "good cause appearing" is insufficient to satisfy the statutory requirement. (*Caldwell v. Samuels Jewelers* (1990) 222 Cal.App.3d 970, 978.) But the trial court here did more. Although it did not detail at length the particulars of DSH's conduct, it included sufficient information to satisfy section 177.5.

Each sanctions order in this case contains: (1) the date the trial court issued the OSC; (2) a statement that the court "incorporated by reference the [*Czirban*] decision, including all documents, testimony, and evidence"; (3) a statement that court heard arguments and found no changes since *Czirban*; (4) a statement that court imposed sanctions "based on the circumstances of the individual defendant and having regard for the DSH's failure to demonstrate good cause or substantial justification for its failure to comply with the standing *Loveton* order"; and (5) an exhibit setting forth the number of days by which the date of admission exceeded *Loveton*'s 60-day requirement. Importantly, the court "incorporated by reference" the 40-page *Czirban* decision, which provides a detailed analysis of DSH's violations and addresses why each of the justifications DSH proposed at the time were insufficient to excuse its conduct. Because the court issued *Czirban* in August—in the middle of the hearings for this case—there is

8

no reason to require the court to repeat itself to DSH.  The sanctions orders were sufficiently detailed.

4.      *Whether Section 177.5 Sanctions Can Be Punitive*

DSH also claims that the trial court erred by applying section 177.5 in a punitive manner.  According to DSH, no case law supports the imposition of punitive sanctions.  DSH asserts that *In re Woodham* (2001) 95 Cal.App.4th 438, 444, stated only in dictum that the statute "was contemplated to authorize punitive sanctions."  However, this Division recently cited *Woodham* in noting that the purpose of section 177.5 is to "punish and deter," such that sanctions under section 177.5 "may be used as a deterrent and imposed for punitive purposes."  (*People v. Landers* (2019) 31 Cal.App.5th 288, 303, 307.)  This argument is thus unavailing.

5.      *Authority to Impose Daily Monetary Sanctions*

DSH next contends the trial court had no authority to impose a "successive punishment" for each day past the deadline and to order DSH to compensate the county for the daily costs of housing the defendants.  It is immaterial that no statute specifically authorizes the court to order daily sanctions because section 177.5 "do[es] not require the court to relate the amount of the sanction to the actual cost to the county traceable to the violation of the court order."  (*People v. Tabb* (1991) 228 Cal.App.3d 1300, 1311–1312.)  Rather, the sanction amount must only be reasonable and within the $1,500 limit.  (§ 177.5.)  The sanctions orders here do not exceed the statutory maximum, and DSH fails to show that the amounts are unreasonable.

DSH also claims the Legislature did not intend violations of Penal Code section 1370 to be punishable by sanctions.  However, the court imposed sanctions not for DSH's failure to comply with the Penal Code, but for its violation of the *Loveton* court order— precisely the type of conduct addressed by section 177.5.

6.      *Violation of Separation of Powers*

DSH further argues that the trial court "invade[d] the Legislature's constitutional authority" by using state hospital funds to compensate the superior court.

9

DSH relies on *Butt v. State of California* (1992) 4 Cal.4th 668, 698, where our Supreme Court reversed a trial court's order to use funds from one school district to support another district. *Butt* is distinguishable, however, because the court in that case "diverted" funds that had been "earmarked" for a specific purpose. (*Ibid*.) Here, the court imposed sanctions because DSH violated a court order, not because the court sought to divert DSH's funds. That the sanctions might affect hospital funds is an unfortunate, but by no means unconstitutional, consequence of DSH's conduct.

### B.      The Trial Court Properly Admitted Defendants' Evidence.

#### 1.      Standard of Review

We review rulings on the admissibility of evidence for abuse of discretion. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446–447 (*Christ*).) To constitute an abuse of discretion, the trial court's ruling must be "arbitrary, capricious, or patently absurd." (*Id.* at p. 447) Even if the trial court abuses its discretion, we will not reverse unless the error resulted in a "miscarriage of justice." (*People v. Watson* (1956) 46 Cal.2d 818, 836; Cal. Const., art. VI, § 13.) The burden is on the appellant to demonstrate error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).) In addition, an appellant must have made a timely and specific evidentiary objection below to preserve its argument on appeal. (Evid. Code, § 353, subd. (a); *SCI California Funeral Services v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 563–565 (*SCI California*).)

#### 2.      Proper Calculation of the 60-Day Deadline

As a corollary to its arguments regarding the admissibility of evidence, DSH also contends the trial court erred as a matter of law by determining that the 60-day admission requirement ran from the date of the commitment order, rather than the date DSH received the 1370 packet.

In its OSCs, the trial court wrote that DSH had violated the *Loveton* order by failing to admit each defendant within 60 days of the order of commitment. The court later stated, however, that it would follow *Czirban* and "have [the delay] calculated from the date the packet—packet was received until the admission." Contrary to DSH's assertion, calculating the 60-day deadline as running from the date of commitment, as

10

stated in the OSCs, was consistent with *Loveton* and did not constitute error. (*Loveton, supra*, 244 Cal.App.4th at p. 1036.) As noted above, we will analyze the propriety of the sanctions orders in light of the evidence presented and the *Loveton* requirements, as *Loveton* was the basis for the sanctions requests. As discussed below, review of the evidence through that lens demonstrates that the court erred only in its order imposing sanctions as to defendant Riley.

> 3. *Admissibility of Defendants' Exhibits*

DSH contends that the court prejudicially erred by relying on "unauthenticated hearsay documents." This claim has no merit.

At the final hearing, defendants prepared seven exhibits supporting their contentions as to when DSH received each 1370 packet. After marking these exhibits for identification—but before admitting the them into evidence—the trial court explicitly asked DSH for its objections. DSH addressed only Exhibit C (Wadley), Exhibit C (Wise), and Exhibit A (Wadley).

Exhibit C (Wadley) and Exhibit C (Wise) consist of two tables documenting the date of packet receipt, the date of admission, and the number of days exceeding *Loveton*'s requirement. During the hearing, DSH objected that the tables were not "competent" evidence as to the accuracy of the dates. However, a proper objection must "make clear the specific ground of the objection." (Evid. Code, § 353, subd. (a).) In addition, a party may not make an objection on one basis and then later claim inadmissibility on different grounds. (*People v. Bradley* (2012) 208 Cal.App.4th 64, 88.) Because DSH did not assert a hearsay objection below, it cannot raise this objection on appeal. (*Ibid.*)

We now turn to Exhibit A (Wadley). This exhibit contains a table of patient names and relevant dates along with a cover letter from Samuel Rosales, stating that he is the Health Services Administrator for Contra Costa Health Services–Detention Health Services and that the attached evidence is "a true and accurate record of information retrieved from files kept by Detention Health Services Health Information Management Unit regarding patient's [sic] records" sent to DSH. DSH objected only that this exhibit was "not properly authenticated" because Rosales' letter was not a custodian of records

declaration signed under penalty of perjury. As DSH did not assert a hearsay objection, it cannot now complain on this basis. (*SCI California, supra,* 203 Cal.App.4th at pp. 563–564 [defendant's trial objection that expert's testimony was "speculative and irrelevant did not encompass" the claim on appeal that expert employed an improper methodology].) Moreover, a writing need not be authenticated by a custodian of records declaration signed under penalty of perjury, as the Evidence Code requires only that the proponent introduce evidence sufficient to sustain a finding that the writing is what the proponent claims it to be. (Evid. Code, § 1400, subd. (a); *People v. Skiles* (2011) 51 Cal.4th 1178, 1187 [citing Evid. Code § 1400 subd. (a) and noting that a writing may be authenticated by circumstantial evidence].) On this record, the trial court did not abuse its discretion in admitting Exhibit A (Wadley), as Rosales' letter adequately authenticated the entire exhibit in a context where the exhibit arrived in response to a subpoena duces tecum.

As to Exhibit A (Wise), Exhibit B (Wise), Exhibit B (Wadley), and Exhibit D (Wadley), DSH failed to object and has thus forfeited its right to complain on appeal. (*SCI California*, *supra*, 203 Cal.App.4th at p. 563–565.) We conclude that the court properly admitted all seven of defendants' exhibits.

## C.    *The Trial Court Did Not Shift the Burden of Proof.*

According to DSH, the trial court improperly placed the burden on DSH to show the correct dates of packet receipt rather than requiring defendants to provide competent evidence that DSH violated the *Loveton* order. We disagree.

DSH asserts that it had no notice and no opportunity to challenge defendants' evidence because the exhibits were produced for the first time in court. A review of the record shows that, in reality, DSH did not take any of its earlier opportunities to challenge defendants' evidence or present evidence of its own. During the September 18 hearing, DSH asserted in a conclusory fashion that the "dates that the Public Defender believes the packets were received were not, in fact, the dates that [DSH] received the packets." In response, the trial court asked DSH and defendants to provide evidence,

emphasizing that it wanted to "hear from both sides." Neither party submitted documents at the next hearing, so the trial court renewed its request for spreadsheets from both sides.[6] In late October, the court sent DSH a letter attaching defendants' exhibit and asking if DSH agreed with the dates therein. DSH responded that the data was "inconsistent" with its records but failed to provide any explanation or evidence to counter the dates presented by defendants.

During the November 13 hearing, DSH again contended that "[t]here's no evidence for any of this stuff," without offering its own evidence. In the last scheduled hearing, defendants presented the seven exhibits described above. The court admitted these exhibits, noting, "I haven't heard any countervailing evidence from [DSH]." At this point, DSH told the trial court it would submit its own evidence, but the court rejected the implied request to continue the hearing for yet another day, stating, "No, we're done. Today is the day." Because DSH had months to present its own evidence, we decline to find that the trial court erred by not giving DSH unlimited future opportunities to do so.

Under the abuse of discretion standard, the trial court must have only a "reasonable or fairly debatable justification" for its rulings. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957.) The trial court provided both parties with a fair opportunity to present evidence supporting their version of the facts, but DSH failed to do so. As explained above, it was not "arbitrary, capricious, or patently absurd" for the court to accept defendants' evidence and base its rulings thereon. (*Christ*, *supra*, 2 Cal.App.5th at p. 447.) Additionally, while defendants had the burden to prove their allegations in the trial court, DSH has the burden to demonstrate reversible error on appeal. (*Jameson*, *supra*, 5 Cal.5th at pp. 608–609.) We are not persuaded that the court shifted the burden, as the court did not err in admitting defendants' evidence and DSH

[6] DSH stated only that it "[would] be prepared [at a future hearing] to submit evidence that, at least as to four of the, um, individuals at issue here, they were all admitted within 60 days of a complete packet being received." The court later discharged the OSCs for those four individuals; they are not part of this appeal.

13

did not present any controverting evidence despite having numerous opportunities to do so.

### D. The Trial Court Did Not Deny DSH Due Process.

DSH next argues that the trial court abused its discretion and violated due process by refusing to grant DSH an evidentiary hearing to show good cause or substantial justification for its alleged violations.

Section 177.5 requires adequate "notice and an opportunity to be heard" prior to the imposition of sanctions. (§ 177.5.) However, the right to be heard is not the same as the right to present evidence, and the court has discretion to deny the latter. (*Seykora v. Superior Court* (1991) 232 Cal.App.3d 1075, 1082.) The trial court did not abuse its discretion by denying DSH an evidentiary hearing for several reasons.

First, the court provided DSH adequate notice. In *Seykora*, *supra*, 232 Cal.App.3d at p. 1078, the court ordered sanctions after giving a verbal warning only one day prior, without issuing an OSC or holding an evidentiary hearing. The *Seykora* court found that, under the circumstances of the case, one-day notice satisfied the notice requirement's rationale to "advise the responding party that the imposition of sanctions is being considered, and to give the party an opportunity to prepare for the hearing." (*Id.* at p. 1081.) Here, the trial court issued a written Order to Show Cause Why Sanctions Should Not Be Ordered for each defendant, with the earliest being in June 2017. DSH clearly knew the trial court was contemplating sanctions and it had five months of preparation time between the first OSC and the November hearings. This was sufficient.

Second, DSH had adequate notice that the court might deny an evidentiary hearing. DSH asked for a separate hearing to present additional evidence on the issues offered during the *Czirban* hearings, claiming, "Things have changed as well. This is a few months later since that hearing, so we have more to say." The trial court stated that it would not re-litigate any of the issues recently decided in *Czirban* and that it saw "no basis at this time to reopen anything—any hearing for evidence." The court made clear the uncertainty of a hearing when it said: "I think I should think about it . . . We'll see."

14

On November 13, the court again expressed doubt as to DSH's offer of proof, stating, "I don't know that a threshold of a new evidentiary hearing has been met." Because the court never definitively stated it would grant DSH the requested evidentiary hearing, DSH should not have assumed that it would have a later chance to present evidence.

Third, the trial court provided DSH an adequate opportunity to be heard. DSH claims that the court relied on "old and insufficient evidence" from *Czirban* to make its ruling here when it should have permitted a separate hearing for new evidence. While DSH did contend that "[t]hings have changed" since *Czirban*, it never provided sufficient evidence or offers of proof showing *how* things had changed. DSH never submitted evidence supporting its assertion that a lack of involuntary medication orders precluded the issuance of sanctions, and the court reasonably concluded that DSH's planned projects to expand admission capacity were irrelevant to the present case because those projects were not yet in effect. Further, the *Czirban* court had already addressed those same projects in its 40-page decision and found that they did not constitute good cause. We note that DSH attempted to present additional justifications for its untimely admissions in its Request for an Evidentiary Hearing; the court did not abuse its discretion in ruling that DSH submitted this document too late for the court to consider the contents.

Lastly, the timeline between *Czirban* and this case suggests that an evidentiary hearing was unnecessary. The *Czirban* hearings concluded in April 2017, and the court issued its decision in August 2017. The court held hearings in this case between June and November 2017—only a few months after *Czirban*.

Accordingly, we conclude that DSH was denied neither notice nor an opportunity to respond before the court imposed sanctions.

### E.    *Errors in Specific Cases*

Finally, DSH contends that the court erred in certain cases. DSH argues it did not receive classification records from the sheriff for Hooper, Martha, Riley, Saechao, Wadley, and White and therefore could not timely perform "security assessment[s]" for these patients. But neither the Penal Code nor *Loveton* requires security classification

records to be included in a 1370 packet, so this omission does not excuse DSH's delay. (Pen. Code, § 1370,subd. (a)(3).)

DSH next claims that it received the requisite records for Martinez, Saechao, and Riley more than five days after their commitment orders and that it therefore did not violate *Loveton* when it admitted these patients more than 60 days after receipt. DSH is correct that *Loveton* requires IST defendants to be committed within 60 days " 'provided the defendant's complete information packet [was] received by the hospital within five days of the commitment order.' " (*Loveton, supra,* 244 Cal.App.4th at p. 1036.)

The court did not err in imposing sanctions based on DSH's untimely admission of Martinez or Saechao. The court signed Martinez's order of commitment on July 20, 2017. The record demonstrates that DSH received Martinez's 1370 packet four days later on July 24, 2017 and admitted Martinez more than three months later, on November 9, 2017. Similarly, the court signed Saechao's order of commitment on April 12, 2017 and DSH received Saechao's 1370 packet the next day but did not admit him until July 5, 2017.[7] There was thus no error in imposing sanctions with respect to Martinez and Saechao.

The court signed a commitment order for Riley on March 29, 2017. However, according to defendants' Exhibit C (Wadley), DSH received his 1370 packet on April 4, 2017, which is more than 5 days after the date of commitment. Accordingly, DSH did not violate *Loveton* with respect to Riley because it did not receive the requisite records " 'within five days of the commitment order.' " (*Loveton, supra,* 244 Cal.App.4th at p. 1036.) The court thus erred in imposing sanctions as to this defendant.

---

[7] In the Saechao matter, DSH points to a June 8, 2017 court order to the sheriff to produce Mr. Saechao's records and argues that Saechao's admission on July 5 was therefore within 60 days of receipt of that date. This is a red herring, as the June 8, 2017 "unreported minute order" refers to Mr. Saechao's medical and "security records," the latter category of which is not required under section 1370. (Pen. Code, § 1370, subd. (a)(3).) By contrast, the April 12, 2017 order of commitment properly orders the sheriff to produce Saechao's medical records, as required under section 1370, subdivision (a)(3)(I). (*Ibid.*)

DSH also complains that the final sanctions orders for Saechao and Wise erroneously refer to the incorrect dates on which the respective OSCs issued; specifically, DSH contends that the Saechao sanctions order mistakenly references an OSC from July 3 while the Wise sanctions order inaccurately states that the OSC in that case issued on October 17.  It is true that the court signed the Saechow OSC on June 28, not on July 3, and the Wise OSC on October 31, not on October 17.  These errors are harmless, however, as the OSC date is irrelevant to the number of days between the date of the commitment order and defendant's admission, which is the relevant calculation under *Loveton*.

Finally, DSH contends that the court erred by relying on inaccurate dates to find violations.  It claims that the record "is replete with discrepancies," citing errors in the dates that the court stamped, filed, and served various OSCs, orders of commitment, and orders for competency evaluations.  Except with respect to Riley (as noted above), these discrepancies do not warrant reversal because DSH fails to show that such errors affect the validity of the court's findings that DSH violated *Loveton*.

## DISPOSITION

The trial court had authority to sanction DSH under Code of Civil Procedure section 177.5 and applied the statute correctly.  The court also provided DSH with adequate due process and properly admitted defendants' supporting evidence.  As the record demonstrates that DSH did not receive Riley's records within five days of the commitment order, we reverse the sanctions order as to that defendant.  We affirm the sanctions orders as to all other defendants.

17

_____

BROWN, J.


WE CONCUR:


_____

STREETER, ACTING P. J.


_____

TUCHER, J.


*People v. Hooper*  (A153313)

18

Trial Court:    Contra Costa County Superior Court

Trial Judge:    Hon. Patricia M. Scanlon

Counsel:

Robin Lipetzky, Public Defender, Stephanie Regular, Maya Nordberg, and Ian Mc Gratten, Deputy Public Defenders, for Defendants and Respondents.

Xavier Becerra, Attorney General, Julie Weng-Gutierrez and Cheryl L. Feiner, Assistant Attorneys General, Susan M. Carson, Hadara R. Stanton, and Gregory D. Brown, Deputy Attorneys General, for Objector and Appellant.