Filed 5/20/24  Avila v. Guerrero CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DYANNA AVILA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LEOBARDO GUERRERO,<br><br>    Defendant and Appellant. | B326792<br><br>(Los Angeles County<br>Super. Ct. No. 21WHRO00278) |

APPEAL from an order of the Superior Court of Los Angeles County, James E. Horan, Judge.  Affirmed.

Lisa F. Rosenthal and Law Offices of Rosenthal & Associates for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

Leobardo Guerrero appeals from an order requiring him to pay $15,000 in sanctions pursuant to Family Code section 271,[1] issued in relation to domestic violence restraining order (DVRO) proceedings. Guerrero asserts the sanctions order must be reversed because the court lacked authority to sanction him on its own motion and failed to provide him sufficient notice of its intention to sanction him. He further asserts the order was an abuse of discretion because his conduct did not merit sanctions, and the amount of sanctions was unreasonably financially burdensome. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    Wife's DVRO Request**

Guerrero and his wife Dyanna Avila (wife)[2] share two minor children and an adult daughter; they stopped living together in December 2018. On March 5, 2021, wife filed a request for a DVRO against Guerrero, alleging he had been harassing and intimidating her, had attempted to break into her house and beat up her new partner, and had been showing up to her home at random times. She also asserted that while she was at a restaurant with her new partner, Guerrero approached her in a threatening manner, sat at the edge of the booth she was occupying, told her that she was never moving on from him, and then spat in her face. She attached to the petition copies of some text messages Guerrero had sent her. That same day, the court

---

[1]    All subsequent undesignated statutory references are to the Family Code.

[2]    Guerrero filed for dissolution of the marriage during the pendency of the domestic violence restraining order petition.

issued a temporary restraining order (TRO) restraining Guerrero and protecting wife.[3]

On March 24, 2021, the court held the first hearing on the DVRO. On April 14, 2021, wife testified and the trial court continued the hearing to May. On May 5, 2021, the court heard testimony from two more witnesses and continued the hearing. We do not have a copy of the reporter's transcripts from these hearings, but the focus of the hearings appears to have been whether Guerrero spat in wife's face, which Guerrero denied doing at the inception of the DVRO proceedings.

While the DVRO proceedings were pending, on July 8, 2021, Guerrero approached the restaurant where wife had been working. Wife, who was packing up her personal belongings[4] with her adult daughter and the daughter's boyfriend, hid from Guerrero inside the restaurant. When wife left the restaurant parking lot in a U-Haul truck, Guerrero followed her in a car, tailgated the truck, and had his passenger exit the vehicle and take photos of the U-Haul. Guerrero's pursuit ended when he was pulled over by police.

On August 4, 2021, wife filed an order to show cause for contempt of the TRO based on the July 8th incident. She supported it with affidavits from herself, her adult daughter, and the daughter's boyfriend, as well as photos of Guerrero in a

---

[3]    A copy of the TRO is not in the record. However, the trial court's case summary reflects that it was issued.

[4]    Wife and Guerrero previously owned this restaurant. On July 8, 2021, wife was in the process of shutting down the restaurant due to Guerrero's failure to pay certain permits.

vehicle outside the restaurant and on the road following her when she was in the U-Haul.

## II.    The August 2021 Hearing

On August 5, 2021, the court held a subsequent hearing on the DVRO and heard testimony from wife, the adult daughter, the daughter's boyfriend, and Guerrero.  Toward the end of the hearing, wife's counsel asked Guerrero about a text message Guerrero sent wife,[5] admitting that he spat at her.  Guerrero testified he did not recall sending that message.

Following testimony, the court granted wife's DVRO request, and issued a two-year permanent restraining order against Guerrero.  The court also awarded wife sole legal and physical custody of the minor children.  The court found that each witness (even Guerrero) supported wife's claim that Guerrero spat in her face.

The court then explained that it was sanctioning Guerrero pursuant to section 271 because he had been dishonest:

> "It is overwhelmingly clear – and I do mean 'overwhelmingly' clear – that respondent sp[a]t in petitioner's face.  It is overwhelmingly clear that it was not an accident. . . .
>
> "If he had taken the stand and admitted it, this would have been a five-minute hearing.  I could have moved on to custody.  I could have come up with temporary custody orders that could have benefited everybody, maybe looking past the presumptions.  But even if I didn't, I could have ordered visitation

---

[5]    This text message was not included in the text messages wife attached to her request for the DVRO; wife found this text message shortly before the August 2021 hearing.

4

that prevented the daughters from losing time with their father.

> "Instead, he has adopted a dishonest position and maintained it over the course of many, many hearings. Perhaps most insultingly, he takes the stand on the very last day and tries to convince me that not only he didn't spit, he did not spit in Petitioner's face – clearly he did – but that she has now manufactured evidence in order to convince the Court that his otherwise undeniable confession in text happened."

The court issued sanctions in the amount of $5,000, stating that Guerrero had "directly violated Family Code section 271." The court expressed frustration that the DVRO trial "used an incredible amount of court time on an issue that did not deserve [it]. It was not a difficult issue. It was not a difficult factual issue. [¶] It was mostly driven by a denial that is false."

## III.  Additional Hearings on Sanctions and Contempt

In October 2021, the trial court denied wife's request to hold Guerrero in contempt for violating the DVRO, but scheduled an evidentiary hearing regarding monetary sanctions for violation of the TRO.

The trial court held evidentiary hearings on sanctions in July and September 2022. At the hearings, the court found that Guerrero violated the restraining order and imposed sanctions of $15,000[6] at the rate of $500.00 per month. However, the court deferred payment of sanctions pending a further hearing on

---

[6]  This appears to be an interim order, which the court later finalized on January 11, 2023.

5

Guerrero's income and finances, and the court ordered Guerrero to file and serve an updated income and expense declaration.[7]

Guerrero's subsequently filed income and expense declaration indicated he became unemployed in April 2022 and was receiving $185 monthly in public assistance.

## IV.    January 2023 Hearing

On January 11, 2023, the Court held the final hearing on sanctions.  On the day of the hearing, Guerrero's counsel submitted a brief arguing against sanctions.  Citing *Featherstone v. Martinez* (2022) 86 Cal.App.5th 775, 785 (*Featherstone*), which stated that taking "litigation positions with which the court disagreed" is not a basis for sanctions, Guerrero argued "[t]he fact that the Court found Respondent not to be 'credible' in a trial/evidentiary hearing is not a basis to award sanctions under" section 271.  Guerrero asserted that he did not take actions to delay legal proceedings because he did not file motions.  He also questioned the trial court's authority to sanction him sua sponte.  Lastly, Guerrero asserted a sanction would impose an unreasonable financial burden on him.

At the hearing, Guerrero's counsel argued that wife should have moved for attorney fees under section 6344, as that would have been the appropriate vehicle for awarding fees.  Counsel reiterated that because Guerrero was on welfare, receiving food stamps, and unemployed, he had no ability to pay sanctions.

---

[7]    We were not provided reporter's transcripts of these proceedings; the above summary comes from the court's minute orders.  Guerrero only furnished this court with transcripts from the August 5, 2021 and January 11, 2023 hearings.

Wife's counsel argued that Guerrero intentionally misled the court numerous times, first at hearings on the original DVRO request when he denied spitting in wife's face, and again during the hearings regarding whether he violated the TRO. Counsel asserted that just because wife's prior counsel[8] did not ask for attorney fees under section 6344 "doesn't mean the court cannot sanction respondent for taking up the court's time for five days of misleading this court and lying and not being credible and constantly changing his stories." Wife's counsel also asserted Guerrero willfully remained unemployed and had community interest in real property worth at least $400,000, and thus could afford sanctions.

The court then identified three categories of conduct that prolonged the proceedings and merited increasing[9] the existing sanctions to $15,000 under section 271: (1) committing perjury about not spitting in wife's face, (2) violating the TRO, and (3) making inconsistent statements to the court about whether he violated the TRO.

As to the first category, i.e., lying under oath, the court explained that although he had a right to defend against the DVRO, he did not have a right to fight the DVRO by committing perjury. The court further stated, "On top of that, in the process of repeatedly telling something other than the truth, he engaged in detailed, very well executed litigation, cross-examination of multiple witnesses, all furthering the untruth that he was putting in front of the court."

---

[8]     Wife obtained new counsel in May 2022.

[9]     The court stated it was increasing the total sanctions from $5,000 to $15,000.

As to the second category (violating the TRO), the court found: "While the litigation [wa]s pending, he directly violate[d] the court order put in place to . . . help the case resolve in a way that is consistent with the law peacefully. Settlement-oriented where possible. Encouraging cooperation between the parties."

For the third and final category of conduct, the court found that during the 2022 hearings, Guerrero changed his responses to the court's questions about whether he violated the restraining order. The court stated that through counsel, Guerrero had represented to the court that he was "just coincidentally" at the restaurant and "happened to see" wife there. However, months later, when the court asked Guerrero the same question under oath, "his answers had changed 100 percent . . . without apology, without any real explanation, any credible explanation."

The court concluded that Guerrero violated "both the letter and intent of Family Code [section] 271." The court opined, "[U]nder no circumstances can somebody take the oath to tell the truth, the whole truth, and nothing but the truth and then cause many days and many hours of litigation by failing to tell the truth." The court ordered Guerrero to pay a total of $15,000 in sanctions because "clearly [$]5,000 was not enough" and $15,000 "is far less than the amount of attorney[] fees spent by [wife]."

The court then stated it had alerted Guerrero that he was obligated to work pursuant to the Family Code to support his children. The court found that without explanation, Guerrero failed to engage in employment since April 2022 despite being "incredibly capable" and lacking "apparent disabilities." The court found the sanctions would not be an unreasonable financial burden when broken into $500 monthly payments.

8

Guerrero timely appealed the court's sanctions order. (See Code Civ. Proc., § 904.1, subd. (12) [order directing payment of monetary sanctions exceeding $5,000 is an appealable order].)

**DISCUSSION**

Guerrero argues the court lacked authority to impose sanctions on its own motion and that he did not receive adequate notice of the court's intent to impose the August 2021 sanctions. He also asserts the court abused its discretion by ordering sanctions because he did not engage in sanctionable conduct and because the sanctions were unreasonably financially burdensome.

## I. Sanctions Under Section 271[10]

"Section 271 provides that a family court may impose an award of attorney fees and costs 'in the nature of a sanction' where the conduct of a party or attorney 'frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.' (§ 271, subd. (a).)" (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1316.) In other words, "section 271 vests family law courts with an additional means with which to enforce this state's public policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel." (*Id.* at p. 1318.) Section 271 mandates that an award may only be

---

[10] The Legislature made minor amendments to section 271 that became effective in January 2024. (Assem. Bill No. 1179 (2023–2024 Reg. Sess.).) As the trial court ordered sanctions pursuant to the version of section 271 that existed in 2023, we quote from and base our analysis on the version of the statute that was in effect in 2023, unless indicated otherwise.

9

imposed "after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard." (§ 271, subd. (b).)

When issuing a sanction under section 271, "the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities." (§ 271, subd. (a).) While the other party's "financial need" is irrelevant under section 271, "[t]he court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed." (§ 271, subd. (a).) Further, an "award of attorney's fees and costs as a sanction pursuant to this section is payable only from the property or income of the party against whom the sanction is imposed, except that the award may be against the sanctioned party's share of the community property." (§ 271, subd. (c).)

## II. The Trial Court Had Discretion Under Section 271 to Impose Sanctions on Its Own Motion

Based on the language of former section 271, Guerrero argues the trial court did not have authority to sanction him on its own motion. Applying the well-established rules of statutory construction, we review Guerrero's contention de novo. (*Citizens for a Responsible Caltrans Decision v. Department of Transportation* (2020) 46 Cal.App.5th 1103, 1119.) As our primary task is to determine the Legislature's intent, we first look to the plain meaning of section 271's language. Where the language is open to multiple reasonable constructions, we consider the statute's legislative history. (*Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1396; *De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 750.)

10

Prior to 2024, former section 271 did not specify that the trial court could impose sanctions on its own motion. Citing *Featherstone, supra,* 86 Cal.App.5th at page 783, Guerrero argues that former section 271 does not give the trial court authority to sanction a party on its own motion due to the statute's lack of specificity.[11] Although the *Featherstone* court did not decide the issue because it reversed the trial court on other grounds, the court stated: "There is a question as to whether section 271 even authorizes a family court to issue sanctions on its own motion." (*Ibid.*) In a footnote, the court signaled that Code of Civil Procedure sections 128.5, subdivision (c), 128.7, subdivision (c)(2), and 177.5, all which explicitly authorize the court to impose sanctions on its own motion, should be compared to former section 271, which did not expressly state who may bring a motion for sanctions. (*Featherstone, supra*, 86 Cal.App.5th at p. 783, fn. 6.)

In response to the *Featherstone* opinion, in 2023, the legislature amended section 271 to state that "a sanction pursuant to this section shall be imposed only after notice by the requesting party or *the court* to the party against whom the sanction is proposed" (§ 271, subd. (b), italics added.); that amendment became effective in January 2024 (Assem. Bill No. 1179 (2023–2024 Reg. Sess.).). The legislative history for the amendment clarifies that section 271 has always been intended to empower a court to sanction a party on its own motion.

As explained by the chair of the Assembly Committee on Judiciary in a memorandum advocating for adoption of the recent amendment, former "[s]ection 271 states that the sanctioned

---

[11] *Featherstone* was published in 2022.

11

party must receive notice of the proposed sanction and an opportunity to be heard, but it does not expressly say who has the authority or responsibility of providing such notice. According to a family law judge who brought this issue to the author's attention, as a matter of existing practice, a party may request sanctions and serve notice on the other party, or the court may, on its own, provide notice to a party during the proceeding by warning them that their conduct, if continued, could lead to sanctions. However, a recent appellate court interpreting Section 271 questioned whether the statute provided clear authority to the court to provide notice of possible sanctions. This bill would clarify what has, apparently, been the existing practice of family law judges since the current statute was added to the law in 1993. That is, either the party, or the court on its own motion, may provide notice to the party against whom sanctions are proposed, and sanctions may only be imposed after notice and an opportunity to be heard. This bill is a sensible and technical fix that removes any ambiguity about the court's authority to provide notice." (Assem. Com. on Judiciary, Proposed Consent of Assem. Bill No. 1179 (2023–2024 Reg. Sess.) as introduced February 16, 2023, p. 1.)

Notwithstanding former section 271's lack of specificity regarding who may move for sanctions, it is clear the Legislature intended to allow trial courts to sua sponte impose sanctions against parties.

## III. The Trial Court Provided Guerrero With Adequate Notice of Sanctions

Guerrero argues the $5,000 sanction ordered on August 5, 2021 violated his due process rights because the trial court did

not advise Guerrero prior to the August 5th hearing that it intended to sanction him.

"Due process mandates adequate notice and opportunity to be heard prior to the imposition of sanctions. [Citation.] The trial court may raise the issue of sanctions on its own motion but, in doing so, it must give notice of its intent to impose sanctions." (*Barrientos v. City of Los Angeles* (1994) 30 Cal.App.4th 63, 70, italics omitted.) "When sanctions are at issue, due process can be satisfied if the court gives a clear warning identifying the anticipated grounds for the sanctions or if those grounds are identified . . . and the court provides counsel with an opportunity to respond at least orally." (*Shenefield v. Shenefield* (2022) 75 Cal.App.5th 619, 631–632.) We review Guerrero's due process challenge de novo. (*Id.* at p. 629.)

We need not decide whether the trial court gave adequate notice of the sanctions at the August 2021 hearing because the court reconsidered these sanctions at multiple subsequent hearings in 2022, gave notice to Guerrero of its intent to order increasing sanctions, and provided Guerrero's counsel ample opportunity to brief and argue sanctions based on Guerrero's perjury at the DVRO hearings and subsequent conduct. On January 11, 2023, Guerrero's counsel filed a brief opposing the imposition of sanctions pursuant to section 271 based on Guerrero's conduct at the DVRO hearing and argued orally against sanctions. At that January 2023 hearing, the court reconsidered the total amount of sanctions, and the $15,000 sanction subsumed the original August 2021 sanction order.

Based on these opportunities to argue against sanctions, we conclude Guerrero had adequate notice and opportunity to be heard on the issue of sanctions.

## IV. The Court Did Not Abuse its Discretion By Sanctioning Guerrero for His Conduct

Guerrero argues the court abused its discretion in ordering $15,000 in sanctions because (1) the sanctions wrongfully penalized him for defending against the DVRO and (2) Guerrero's violation of the restraining order did not merit sanctions. We review the court's imposition of sanctions under section 271 for an abuse of discretion. (*Featherstone, supra,* 86 Cal.App.5th at p. 784.) " '[T]he term judicial discretion implies absence of arbitrary determination, capricious disposition, or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason.' " (*Marriage of Tharp, supra,* 188 Cal.App.4th at p. 1316.) "[W]e will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225–1226.)

Guerrero asserts he was wrongfully penalized for defending against the DVRO and for taking "litigation positions with which the court disagreed," quoting *Featherstone, supra,* 86 Cal.App.5th at page 785. In *Featherstone*, the trial court imposed $10,000 in sanctions based on the mother's request to set the location, length, and notice period for the father's visitation; the mother's Code of Civil Procedure section 170.1 motion to disqualify the judge for bias; the mother's proposed judgment; and the mother's request that the father's video calls with the child occur on a recordable platform. (*Id*. at pp. 784, 777.) Concluding that the trial court's imposition of section 271 sanctions was an abuse of discretion, the Court of Appeal explained: "Threaded throughout the court's recitation were (1) the court's characterizations of [the

14

m]other's requests as 'entitled,' 'controlling,' and 'overreaching,' and (2) its own umbrage at being accused of bias and being the subject of a disqualification motion. Individually or collectively, this is not litigation behavior that a judge, staying within the bounds of reason, could conclude merited sanctions at all—much less a $20,000 sanctions award (if we count the improper amount assessed against counsel too)." (*Id.* at pp. 784–785.) The *Featherstone* court concluded the trial court "was principally sanctioning [the m]other not for taking actions that frustrated settlement efforts but for taking litigation positions with which the court disagreed." (*Id.* at p. 785.)

Unlike in *Featherstone*, the trial court here did not sanction Guerrero for his litigation position, and in fact it expressly recognized Guerrero's right to defend against the DVRO. Rather, the court sanctioned him for committing perjury, which significantly prolonged the proceedings and increased the cost of litigating the DVRO request.

Guerrero asserts "the fact that the Court may find a party not credible in testimony during a trial is not a basis to award sanctions under Family Code [section] 271." Yet, the court did not merely engage in a credibility determination based on contradictory testimony. By his own admission in the text message produced by wife, Guerrero's testimony was perjurious. Although a party is entitled to zealously defend his position, that party is not entitled to pursue his interests through perjury or conduct inconsistent with the policy of the law and the requirements imposed by section 271. (See *In re Marriage of Daniels* (1993) 19 Cal.App.4th 1102, 1107; § 271, subd. (a) [sanctionable conduct includes that which frustrates state's policy

15

in favor of reducing the cost of litigation]; Pen. Code, §§ 118 [defining perjury], 126 [punishment for perjury].)

Guerrero also contends that the "appropriate remedy, if any, for [wife] was to have filed a motion for attorney fees pursuant to Family Code [section] 6344." Regardless of the availability of attorney fees under another statute, the court acted within its discretion to impose sanctions under section 271 for Guerrero's perjury. (See e.g., *In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099 [affirming sanctions where wife incurred attorney fees enforcing dissolution judgment to obtain her community property interest in an account receivable because husband hid his income and committed perjury in denying that he had a sexual relationship with the client who owned the account receivable].)

Guerrero contends that the trial court also abused its discretion by sanctioning him for violating the TRO because he "did not take any action or engage[] in any conduct or litigation behavior that a judge who is staying within the bounds of reason, could conclude merited sanctions at all." Yet, Guerrero does not challenge the court's findings that he violated the TRO and that he took inconsistent positions about whether he violated it. Nor does he cite any authority that such conduct could not support a sanctions award. Accordingly, the contention is forfeited. (See *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 498 [" 'We may and do "disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." ' "].) We therefore affirm sanctions based on this behavior as well.

16

## V. The Amount of Sanctions Was Not Excessive

Finally, citing his unemployment and reliance on welfare, Guerrero argues the court abused its discretion by ordering $15,000 in sanctions, which placed an unreasonable financial burden on him. We disagree.

Although Guerrero's income and expense declaration indicated he became unemployed in April 2022 and was receiving $185 monthly in public assistance, those were not the only facts before the court about Guerrero's financial situation. Guerrero had a community property interest in a home that was worth at least $400,000. Moreover, the court found that Guerrero, without justification, failed to engage in employment since April 2022.

Given Guerrero's substantial community property interest and unjustified unemployment, the trial court did not abuse its discretion in finding the sanctions were not unreasonably burdensome. (See *Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 403 ["While the court must take into consideration all evidence concerning the parties' incomes, assets and liabilities, the only stricture imposed by section 271 is that the sanction may not impose 'an unreasonable financial burden' on the party sanctioned."].)

## DISPOSITION

The order is affirmed. Because respondent did not participate in the appeal, no costs are awarded.


EDMON, P. J.


We concur:



LAVIN, J.



ADAMS, J.